FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 09, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAGDI GERGAWY and ALISA GERGAWY, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES BAKERY, INC., d/b/a FRANZ FAMILY BAKERIES, an Oregon Corporation; OCCUPATIONAL HEALTH SOLUTIONS, INC., a Washington Corporation; and TAMI KINNUNEN, an individual;<br><br>Defendants. | No. 2:19-CV-00417-SAB<br><br>**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

The Court held a motion hearing in the above-captioned matter on March 4, 2021 via video conference. Plaintiffs were represented by Ryan Best. Defendant United States Bakery ("USB") was represented by Joshua Howard, who presented arguments, and Richard Omata. Defendants Occupational Health Solutions ("OHS") and Tami Kinnunen (collectively, the "OHS Defendants") were represented by Sawyer Margett, who presented arguments, and William Symmes. During the hearing, the Court heard oral argument on the OHS Defendants' Motion for Partial Summary Judgment, ECF No. 54, and USB's Motion Joining the Partial

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 1**

Summary Judgment Motion, ECF No. 65. The Court took the motions under advisement. Having heard from the parties and reviewed the briefing and applicable caselaw, the Court grants the motions.

**Facts**

The following facts are pulled from the parties' respective statements of fact and are, unless otherwise noted, not disputed. All facts and reasonable inferences are construed in Plaintiffs' favor as the nonmoving party. Only the facts relevant to the arguments made in this motion are addressed.

1. Relationship between the OHS Defendants and USB

OHS is a certified third-party claims administrator under Washington's self-insured workers' compensation laws. It provides comprehensive occupational health services to employers, including fitness for duty for management, work injury management, disability management, new hire medical screening, and worker's compensation management. Ms. Kinnunen is an employee of OHS; her title is Worker' Compensation Specialist, and she is a certified claims administrator pursuant to WAC 296-15-360. Although Ms. Kinnunen's job sometimes required her to work with OHS employees and USB employees, she was neither a manager nor a supervisor. OHS has never had more than fifteen employees for any twenty-week period in 2018, 2019, or 2020.

Between November 1, 2005, and August 31, 2019, OHS was USB's third-party administrator and managed its worker's compensation claims before the State Department of Labor and Industries ("L&I"). OHS and USB have no common ownership, officers, directors, or employees. The contract between OHS and USB provided that OHS had power of attorney to act on USB's behalf in administering L&I claims.

2. Mr. Gergawy's Employment with USB and On-the-Job Injury

Plaintiff Magdi Gergawy was hired by Defendant USB in 2003; he has been continuously employed by USB as a baker since that time. On July 9, 2018, Mr.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 2**

Gergawy suffered an injury at work. USB's third-party administrator, OHS, assigned Ms. Kinnunen to manage Mr. Gergawy's worker's compensation claim for the workplace injury. She worked with Mr. Gergawy and USB to facilitate payment of Mr. Gergawy's doctor's appointments, medication, treatments, diagnostic tests, therapies, and time loss compensation for missed work. She also facilitated payments out of a bank account opened by OHS but funded by USB for the purpose of paying out these claims. For the first time in response to these motions, Mr. Gergawy alleges that these payments were "wages" and that OHS was his employer; he also alleges for the first time that Ms. Kinnunen supervised and controlled the conditions of his work.

In February 2019, Mr. Gergawy's medical provider, Scott Pleines, PA-C, requested that Mr. Gergawy undergo an Independent Medical Examination (IME) to assess the status and cause of Mr. Gergawy's reported cervical and lumbar pain. The examination occurred in April 2019. On May 6, 2019, a workday, Mr. Gergawy's pain was severe. During his shift, he contacted April McDonough, USB's safety coordinator, and she told him to see Mr. Pleines. Mr. Gergawy left work early to see Mr. Pleines. Mr. Pleines placed Mr. Gergawy on modified duty for three weeks and scheduled a follow-up appointment for May 28, 2019. After his appointment, Ms. Kinnunen called Mr. Gergawy and told him to go back to Mr. Pleines's office for a re-evaluation. Ms. Kinnunen then faxed a copy of Mr. Gergawy's IME report, dated April 24, 2019, to Mr. Pleines. Mr. Pleines allegedly reviewed the report and deferred to the examiner's findings on May 6, 2019 at 11:36 a.m.

Mr. Gergawy left Mr. Pleines's office and went to see Ms. McDonough to deliver his provider's recommendation modifying his schedule for three weeks. When he got to Ms. McDonough's office, she observed him hunched over and in pain. She took Mr. Gergawy to the emergency room in a company vehicle so that he could be treated. While in the emergency room, Ms. Kinnunen called Mr.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 3**

Gergawy to let him know that he had been scheduled for a re-evaluation with Mr. Pleines for the following day.

On May 8, 2019, Ms. Kinnunen drafted and sent a letter to Mr. Gergawy stating that on May 6, Mr. Pleines agreed with the findings in the IME report. The report indicated that Mr. Gergawy was at maximum medical improvement and that no further medical treatment recommendations were appropriate. It also found that Mr. Gergawy's pain appeared to be caused by a preexisting condition and was not related to any alleged work-related injury. On or about May 9, Ms. Kinnunen sent Mr. Gergawy's file and the IME results to L&I so it could evaluate Mr. Gergawy's claim. After reviewing the records, L&I closed Mr. Gergawy's claim on June 12, 2019, and reaffirmed the decision on July 12, 2019. Mr. Gergawy initiated an administrative appeal of L&I's closure of his claim, but he voluntarily dismissed the appeal.

On May 9, before his appointment with Mr. Pleines, Ms. McDonough set Mr. Gergawy a text message stating "[y]our doctor has already agreed with the IME. When you see him today to discuss, if you plan on returning to work sooner than the 27th, you still need a note from him releasing you."

During the re-evaluation appointment, Plaintiffs allege Mr. Pleines did not examine Mr. Gergawy and instead gave him a completed APF releasing him to work with no restrictions. He told Mr. Gergawy that his pain was from a kidney stone and this his case would be closed. USB disputes this characterization. It alleges that Mr. Pleines examined Mr. Gergawy, went over the IME and MRI results with him, and informed him that he would defer to the IME results. Mr. Pleines also testified that Mr. Gergawy stated that he had a history of kidney stones and agreed that he was at maximum medical improvement. In addition, USB asserts that multiple medical professionals stated there were no clinical reasons for Mr. Gergawy's self-reported complaints of pain on May 6, 2019.

//

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 4**

### 3. Mr. Gergawy's Allegations of Discrimination and Retaliation

Mr. Gergawy's claims of discrimination and retaliation are not wholly relevant to the arguments presented in the instant motions, but are briefly discussed. When Mr. Gergawy returned to work, he alleges his supervisors intensified his workload, refused to accommodate his disabilities, and took away one of his weekend days off. On July 31, 2019, Mr. Gergawy filed an EEOC complaint regarding the conditions and alleged discrimination at USB. He received a right to sue letter on November 27, 2019.

Mr. Gergawy alleges he had requested foreman training from various supervisors over the years, including from Brian Sills, Jim Grantham, Shaun Doty, and Bill Hayes. He alleges he signed up for training several times, both before and after he filed his EEOC complaint, but that he did not receive any training until January 2020, after he filed his EEOC complaint. On March 2, 2020, Mr. Gergawy's previous injury—the one that he alleges went untreated in May 2019—reoccurred at work. He filed another L&I claim and was out until June 14, 2020. USB disputes that Mr. Gergawy's previous injury was not properly treated. USB also argues that he fails to present medical evidence to support such a contention, that his medical records indicate he reached maximum medical improvement, and that he agreed with that assessment. Mr. Gergawy also alleges that USB has not provided Mr. Gergawy with any additional foreman training since he returned.

Mr. Gergawy alleges that he has been retaliated and discriminated against on the basis of his ethnicity, national origin, age, disability, and for filing an EEOC complaint. He alleges that he does not have the authority to work hours outside of his scheduled shifts without the hours first being approved and scheduled by USB. He alleges USB cancelled his medical benefits for fifteen days and that Mr. Gergawy needed the benefits to care for himself, his wife, and their daughter. He alleges no other USB employee had their medical benefits cancelled during that same period of time. Plaintiffs also allege that Ms. Kinnuen called him a "spider"

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 5**

in an email with another OHS employee and that she actively encouraged others to discriminate against him. However, Defendants dispute this characterization, and argue that the objected to email speaks for itself, arguing that—based on context— it is clear the email is about an actual spider. It also objects to the characterization that Ms. Kinnunen discriminated against Mr. Gergawy or encouraged anyone else to do so.

## Procedural History

Plaintiffs filed his original complaint on December 4, 2019. They allege claims including (1) retaliation in violation of public policy and wrongful/illegal retaliation; (2) negligent supervision; (3) violations of the state and federal Family Medical Leave Act; and (4) violations of the Age Discrimination in Employment Act, Americans with Disabilities Act, and the Washington Law Against Discrimination for discrimination based on his age, disability, and race/national origin. He generally seeks relief in the form of compensation for all injuries and damages caused by Defendants, liquidated damages for willful violations, and attorney's fees and costs.

On September 30, 2020, Plaintiffs filed a motion to amend their Complaint. ECF No. 24. The First Amended Complaint was filed on October 19, 2020. ECF No. 28. Plaintiff then filed a Motion for Partial Summary Judgment as to Defendant USB's affirmative defenses. ECF No. 30. The parties apparently reached a resolution, and Defendant USB filed an answer to the FAC with additional information in support of their affirmative defenses, and Plaintiffs withdrew their motion. ECF Nos. 42, 43. However, Plaintiffs filed a very similar motion on December 2, 2020. ECF No. 50. The OHS Defendants filed their motion for partial summary judgment on December 8, 2020. ECF No. 54. The parties engaged in mediation in mid-December, so the Court extended the time to file responses and replies and reset the hearings on the motions. ECF No. 64. Then on December 30, 2020, Defendant USB filed its motion joining the OHS Defendants'

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 6**

motion. ECF No. 65. On January 19, 2021, the Court extended the deadline for completing discovery and filing dispositive motions. ECF No. 82.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). There is no genuine issue for trial unless there is sufficient evidence in the record as a whole favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 7**

## Discussion

In their motion, the OHS Defendants argue that the Court should dismiss the federal discrimination claims alleged against them. They also argue that the Court should dismiss Plaintiffs' state common law tort claim for wrongful retaliation in violation of public policy and claim for worker's compensation claims suppression because those claims do not exist under Washington law. Defendant USB joins as to the state law claim arguments and requests the Court also dismiss those claims as asserted against it. In response, Plaintiffs argue that there are disputes of fact as to whether OHS is an agent of USB and whether OHS was Mr. Gergawy's employer. Plaintiffs also argue that its state law claims do exist under Washington law. The Court considers each argument in turn.

1. <u>Whether There are Any Genuine Disputes of Material Fact</u>

The Court first considers whether there are any genuine disputes of material fact relevant to the arguments raised in these motions. Insofar as the facts are "disputed", they are either not genuinely disputed or not material to the disposition of the issues currently before the Court.[1] Thus, the Court will proceed to the merits of Defendants' arguments.

//

//

---

[1] The Court notes that Defendants asked that the Court apply the sham affidavit rule to certain of Plaintiffs' disputed facts, primarily that Mr. Gergawy believed the OHS Defendants were his employers. Although the Court is declining to invoke that rule, the Court is very skeptical that Plaintiffs ever thought that OHS was his employer or that Ms. Kinnunen was his supervisor. Indeed, deposition testimony indicates that that Mr. Gergawy in fact thought OHS had nothing to do with the actual terms of his employment. *See* ECF No. 57-1 at 10-12. The Court also notes that it strains credulity to believe that a person would be confused about who their employer was in a context like this. However, as the Court should avoid credibility determinations on summary judgment motions and the Court need not apply the sham affidavit rule to dispose of these motions, it declines to do so.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 8**

2. <u>Federal Discrimination Claims Against the OHS Defendants</u>

The OHS Defendants argue that the federal discrimination claims brought against them under Title VII, the ADA, and the ADEA should be dismissed because it was not Mr. Gergawy's employer and even if it was his employer, it is not a covered employer under those laws. They also argue that Ms. Kinnunen cannot be held liable for discrimination because she is an individual employee. In response, Plaintiffs argue that the OHS Defendants can be held liable because they were agents of USB, and they argue federal discrimination laws provide for liability for agents of employers. They also argue that Ms. Kinnuen acted beyond the scope of her employment and directed USB and OHS employees to retaliate against him. The Court grants the OHS Defendants' motion as to these claims.

Covered employers under Title VII and the ADA must have had at least fifteen employees for each workday in at least twenty calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b) (Title VII); 42 U.S.C. § 1211(5)(a) (ADA). In addition, in order to be held liable, the covered employer must have actually employed the plaintiff. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *see also Beckmann v. Ito*, 430 F. Supp. 3d 655, 677 (D. Haw. 2020). An agent of an employer may be held liable under the terms of Title VII, but courts have interpreted that phrase to not literally create personal liability for an employer's agent and instead creates a vicarious liability scheme against employers. *Miller*, 991 F.2d at 587.

Even assuming that OHS was Mr. Gergawy's employer, Plaintiffs do not rebut Defendants' arguments that OHS is not a covered employer. OHS introduced evidence that never had more than fifteen (for Title VII and the ADA) or twenty (for the ADEA) employees for more than twenty weeks of 2018, 2019, or 2020. Thus, because Plaintiffs fail to show that OHS is a covered employer, their claims necessarily fail. Insofar as Plaintiffs attempt to buttress their claims by point to agency theory, Plaintiffs' argument is foreclosed by binding precedent that

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 9**

provides an employer's agent is not personally liable and instead the employer is held vicariously liable for the acts of the agent. Furthermore, other courts have found that a worker's compensation administrator like OHS is not an "employer" when all it does is administer the employer's policies and responsibilities under a worker's compensation scheme. *See Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 984 (N.D. Cal. 2016) (granting a motion to dismiss an ADA claim against former employer's worker's compensation administrator); *Stern v. Cal. State Archives*, 982 F. Supp. 690, 692 (E.D. Cal. 1997).

Accordingly, the Court grants the OHS Defendants' motion on the basis that they are not covered employers under Title VII, the ADA, and the ADEA.

The OHS Defendants also argue Plaintiffs' federal discrimination claims should be dismissed because it failed to exhaust its administrative remedies. Plaintiffs argue that the OHS Defendants have waived their defense by waiting too long to raise it. The Court agrees with the OHS Defendants. The federal discrimination claims against the OHS Defendants also fail because Plaintiffs failed to exhaust their administrative remedies prior to bringing suit.

Title VII requires that a complainant first file a charge with either the EEOC or a state fair employment agency before commencing a Title VII action. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (quoting 42 U.S.C. § 2000e-5(b), (e)(1)). The same rule applies to ADA and ADEA claims. 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a). The purpose of the exhaustion rule is to ensure that a party has an opportunity to respond to the charges against it before the EEOC. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). The exhaustion requirement is waived, however, where the defendants should have anticipated that the claimant would name them as defendants in a Title VII suit or were involved in the acts giving rise to the EEOC claim. *Sosa v. Hiraoka*, 920 F.2d 1451, 1459 (9th Cir. 1990); *Mattioda v. Bridenstine*, 2021 WL 75665, at *6 (N.D. Cal. Jan. 8, 2021).

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 10**

Although exhaustion is no longer a jurisdictional requirement following *Fort Bend County*, some courts have interpreted the Court's ruling to require a plaintiff to allege compliance with the claim-processing rule in order to state a claim on which relief may be granted. *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020); *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 908 (N.D. Cal. 2020). Regardless of whether that rule applies, an objection on the basis of failure to exhaust may be forfeited if the party waits too long. *Fort Bend Cty.*, 139 S. Ct. at 1850 (finding the objecting party had waived its claim when it waited years to raise its objection for the first time). However, the *Fort Bend County* Court did not establish a hard limit for when waiver occurs; instead, waiver occurs when a party fails to timely plead failure to exhaust as an affirmative defense or if it raises it only after the court reaches a judgment on the merits. *See, e.g., Eberhardt v. United States*, 546 U.S. 12, 19 (2005).

The OHS Defendants first raised failure to exhaust administrative remedies in their answer to the original complaint, ECF No. 13 at 16, as well as in their answer to the First Amended Complaint, ECF No. 35 at 25, and in their Amended Answer, ECF No. 44 at 25-26. The OHS Defendants have not waived their defense by waiting until this motion to litigate the defense; indeed, their motion was filed nearly two months before the then-operative dispositive motions deadline.

Turning to the EEOC complaint itself, the complaint does not list OHS or Ms. Kinnunen as a party to the complaint, although it does make passing reference to Ms. Kinnunen. The complaint does not detail any of the allegations raised against OHS now. Plaintiffs do not introduce any admissible evidence showing that the OHS Defendants would be on notice of the claims asserted against them now on the basis of the EEOC complaint they filed against USB. Accordingly, the OHS Defendants' motion for summary judgment on the basis of failure to exhaust administrative remedies is granted as to the federal discrimination claims.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 11

3. <u>Whether a Private Cause of Action for Wrongful Retaliation in Violation of Public Policy Exists Without a Termination</u>

All Defendants move for summary judgment on Plaintiffs' wrongful retaliation claim, arguing that Washington law does not recognize a private cause of action without evidence of termination. They argue that, because Mr. Gergawy has not been terminated and continues to be employed by USB, Plaintiffs cannot make out a retaliation tort claim. In response, Plaintiffs argue that they need not show termination to state a claim because they did not allege a wrongful termination tort claim. They also argued in the hearing that their claim was actually based on Wash. Rev. Code § 51.48.025.

As a preliminary matter, the Court notes that Plaintiffs' First Amended Complaint specifically frames its wrongful retaliation claim as "the common law tort of retaliation for Labor and Industries claims in violation of public policy as outlined in *Wilmot v. Kaiser Aluminum*, 118 Wn.2d 46 (1991)." ECF No. 28 at ¶ 3.2. Nowhere in the Complaint is the provision cited by Plaintiffs in the hearing. In *Wilmot*, the Washington Supreme Court recognized that a worker may file a tort claim for wrongful discharge based upon allegations that the employer discharged the worker in retaliation for having filed or expressed an intent to file a worker's compensation claim independent of the IIA. *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wash.2d 46, 53 (1991). Because Plaintiffs' FAC explicitly references the "common law tort" claim, and not a statutory claim, the Court does not consider Plaintiffs' argument that their claim actually arises under Wash. Rev. Code § 51.48.025.

The tort of wrongful discharge is an exception to the general rule of at-will employment. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 231 (1984). In general, the tort is only recognized in four situations: (1) when an employee is fired for refusing to commit an illegal act; (2) when employees are fired for performing a public duty or obligation, such as serving jury duty; (3) when employees are fired

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 12

for exercising a legal right or privilege, such as filing a worker's compensation claim; and (4) when employees are fired in retaliation for reporting employer misconduct, such as filing a whistleblower complaint. *Rose v. Anderson Hay & Grain Co.*, 184 Wash.2d 268, 276 (2015). In the absence of a specific act or omission that falls into one of those four categories, courts consider (1) whether a clear public policy exists; (2) whether discouraging the conduct in which the employee was engaged would jeopardize that public policy; (3) whether the public policy-linked conduct caused the dismissal; and (4) whether the employer is able to offer an overriding justification for the dismissal. *Becker v. Community Health Sys., Inc.*, 184 Wash.2d 252, 259 (2015).

The Washington Supreme Court has not explicitly recognized a tort cause of action for wrongful retaliation short of termination. Indeed, in the closest case addressing this issue, the Court declined to extend the tort. *See White v. State*, 131 Wash.2d 1, 19-20 (1997) ("Subjecting each disciplinary decision of an employer to the scrutiny of the judiciary would not strike the proper balance between the employer's right to run his business as he sees fit and the employee's right to job security. . . . This is particularly true in instances like this one[,] where an employee's rights are already protected . . . by a collective bargaining agreement and by civil rights statutes."). The Division III Court of Appeals also found that there was no tort claim for relief for employer actions short of termination. *Leon v. State*, 132 Wash. App. 1052, 2006 WL 1149336, at *4 (2006). Federal courts that have considered the issue have similarly held that there is no tort for wrongful discharge where an employee was, for example, placed on leave with full benefits and then did not have her contract renewed. *See Walker v. Ellensburg Sch. Dist.*, 789 Fed. App'x 49 (9th Cir. 2019); *Blackman v. Omak Sch. Dist.*, 466 F. Supp. 3d 1172, 1185-86 (E.D. Wash. 2020); *McMinimee v. Yakima Sch. Dist. No. 7*, No. 1:18-CV-03037-TOR, 2021 WL 298199, at *2 (E.D. Wash. Jan. 5, 2021).

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 13

Despite Plaintiffs' arguments to the contrary, courts in Washington have not recognized a tort cause of action for wrongful retaliation without evidence of termination. Indeed, the language of the case Plaintiffs rely upon explicitly says that a worker "may file a tort claim for wrongful *discharge* upon allegations that the employer *discharged* the worker in retaliation" for filing a worker's compensation claim, and may do so independent of Wash. Rev. Code § 51.48.025. *Wilmot*, 118 Wash.2d at 53.

The undisputed facts show that Mr. Gergawy's employment with USB has never been terminated. Without binding case law from the Washington Supreme Court, this Court declines to recognize a tort cause of action for wrongful discharge without a termination. Recognizing a cause of action for wrongful disciplinary action less than discharge has the potential to generate frivolous claims and would interfere with an employer's discretion to make personnel decisions. *White*, 131 Wash.2d at 19. The Court therefore grants the motion for summary judgment as to the wrongful retaliation in violation of public policy claim.

4. <u>Whether a Private Cause of Action for Claims Suppression Exists under the Industrial Insurance Act</u>

Finally, Defendants argue the Court should grant their motion for summary judgment and dismiss Plaintiffs' claim for worker's compensation claim suppression because there is no private cause of action for such a claim. Defendants argue that the express text of the IIA provides the State Department of Labor and Industries with the exclusive power to enforce and litigate claim suppression claims. They also argue that there is no implied private cause of action for claim suppression because such a cause of action would defeat the legislative intent of the IIA and is inconsistent with the purpose of the IIA. In response, Plaintiffs focus on the grammatical structure of the IIA to argue that there is a private cause of action for claim suppression under the IIA.

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 14

Washington law provides that employers shall not engage in claim suppression. Wash. Rev. Code. § 51.28.010(3). Claim suppression is defined as intentionally inducing employees to fail to report injuries, inducing employees to treat injuries suffered in the course of employment as off-duty injuries, or acting otherwise to suppress legitimate industrial insurance claims. Wash. Rev. Code § 51.28.010(4)(a)-(c). In determining whether an employer has engaged in claim suppression, the Department of Labor and Industries "shall" consider the employer's history of compliance, and whether the employer has discouraged employees from reporting injuries or filing claims. Wash. Rev. Code. § 51.28.010(5). L&I has the burden of proving claim suppression by a preponderance of the evidence. *Id.* An employer found to have engaged in claim suppression shall be subjected to monetary penalties payable to the supplemental pension fund. Wash. Rev. Code § 51.28.025(2).

There is no language in the IIA creating an express private cause of action for claim suppression. Instead, the Act provides that the direction of L&I—or their designee—shall investigate reports or complaints that an employer has engaged in claim suppression. Wash. Rev. Code. § 51.28.025(4). If L&I determines that an employer has engaged in claim suppression and, as a result, the worker has not filed a claim for worker's compensation as allowed by law, then the director may waive the one-year time limit for filing a claim if the complaint of alleged claim suppression is received within two years of the worker's injury and the claim is filed within 90 days of L&I's determination of claim suppression. Wash. Rev. Code § 51.28.025(5). Thus, any allegations that an employer engaged in claim suppression "is a matter to be resolved between the employer and the Department [of L&I]." *Whitehead v. Dep't of Labor and Industries*, 13 Wash. App. 2d 1077, 2020 WL 3097326, at *4 (2020) (affirming superior court's decision affirming decision by the Board of Industrial Insurance Appeals).

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 15

Based on the lack of express text creating a private cause of action for claim suppression, the Court next considers whether there is an implied private cause of action for claim suppression under the IIA. Defendants argue that there is not an implied private cause of action for claim suppression. Plaintiffs' briefing focuses on the grammatical structure of the IIA and does not address Defendants' argument.

Washington courts recognize that a statute may create an implied private cause of action when the legislature did not expressly provide an adequate remedy for violations of statutory rights. *Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wash.2d 433, 445 (1997). To determine whether a statute creates an implied private cause of action, courts examine three factors: (1) whether the plaintiff is a member of the class for whose "especial" benefit the legislature enacted the statute; (2) whether explicit or implicit evidence of legislative intent supports recognition of a private cause of action; and (3) whether an implied private cause of action is consistent with the statute's underlying purpose. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wash. App. 201, 210 (2013) (citing *Bennett v. Hardy*, 113 Wash.2d 912, 920-21 (1990)).

Defendants seem to concede that Mr. Gergawy is a member of the class for whom the IIA was enacted to protect. Mr. Gergawy is an employee of USB, and he suffered at least one on-the-job injury. This element is satisfied.

Turning to the legislative intent of the IIA, the Court concludes that the legislature did not intend to create a private cause of action for claim suppression. In general, the IIA stripped civil courts of jurisdiction over worker's compensation claims, except as explicitly provided elsewhere in the Act, and provided that the Department of L&I had sole jurisdiction over worker's compensation determinations. Wash. Rev. Code. § 51.04.010; *cf. Martin v. Gonzaga Univ.*, 191 Wash.2d 712 (2018) (noting that the Department of L&I had exclusive authority to enforce provision of the IIA governing provision of personnel files upon

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 16

termination). The lack of any express language creating a carve-out to this jurisdiction stripping as to claim suppress stands in contrast to other provisions of the Act that do contemplate a private cause of action. *Compare* Wash. Rev. Code. § 51.28.025 *with* Wash. Rev. Code § 51.48.025. Thus, the legislative intent of the IIA does not suggest that the legislature intended to create an implied private cause of action for claims suppression.

Finally, the recognition of an implied private cause of action for claims suppression would be inconsistent with the purposes of the IIA. The legislature enacted the IIA to make the worker's compensation system more economical and more fair by withdrawing all phases of the process from the jurisdiction of civil courts except where expressly provided elsewhere in the Act. Wash. Rev. Code § 51.04.010. Indeed, as other courts have recognized, "[t]he determination to abolish judicial jurisdiction over such 'immunized' conduct was a legislative policy decision. The wisdom of that decision is not a proper subject of [judicial] review." *Seattle-First Nat. Bank v. Shoreline Concrete Co.*, 91 Wash.2d 230, 242 (1978), *superseded in other part by statute as stated in Kottler v. State*, 136 Wash.2d 437 (1998). This is bolstered by the fact that any penalties for claim suppression revert to the state supplemental pension fund, not to the injured worker. This element weights against recognition of an implied private cause of action for claim suppression.

The only two cases cited by Plaintiffs in support of their contention that there is a private cause of action are not persuasive. First, the *Anderson* case did not recognize claim suppression as a private cause of action and instead only recognized that the plaintiffs had introduced some evidence of a culture of claim suppression as part of her retaliation claim. *Anderson v. Wal-Mart Stores, Inc.*, No. 2:16-CV-00072-SAB, 2016 WL 1960673 (E.D. Wash. May 11, 2017). The *Whitehead* case is similarly unhelpful for Plaintiffs' position. The *Whitehead* court expressly recognized that claim suppression was a matter to be addressed between

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 17**

the employer and the Department, not with the individual worker. 13 Wash. App. 2d at *4. Plaintiffs' attempt to rely on grammatical arguments to suggest there should be an implied private cause of action for claim suppression is unavailing because it stands against the general presumption against implied private rights of actions and does not follow Washington's accepted method of determining whether an implied right of action exists. The Court therefore grants Defendants' motion and finds, as a matter of law, no private cause of action for claim suppression exists under Washington law.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants Occupational Health Solutions, Inc., and Tami Kinnunen's Motion for Partial Summary Judgment, ECF No. 54, is **GRANTED**.

2. Defendant United States Bakery's Motion Joining Motion for Partial Summary Judgment, ECF No. 65, is **GRANTED**.

3. The federal discrimination claims against the OHS Defendants are **dismissed**.

4. Plaintiff's claim of wrongful retaliation in violation of public policy is **dismissed**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 9th day of March 2021.

Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENSE MOTIONS FOR PARTIAL SUMMARY JUDGMENT** * 18