FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 08, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| MAGDI GERGAWY and ALISA GERGAWY, a married couple,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES BAKERY, INC., d/b/a FRANZ FAMILY BAKERIES, an Oregon Corporation; OCCUPATIONAL HEALTH SOLUTIONS, INC., a Washington Corporation; and TAMI KINNUNEN, an individual,<br><br>    Defendants. | No. 2:19-CV-00417-SAB<br><br>**ORDER DISMISSING ACTION** |

Before the Court are Defendants Tami Kinnunen and Occupational Health Solutions, Inc.'s Motion for Summary Judgment, ECF No. 116, and Motion for Sanctions or for a Show Cause Hearing, ECF No. 149; and Defendant United States Bakery's Motion for Summary Judgment, ECF No. 122, and Motion to Strike Declaration in Opposition to Motion for Summary Judgment, ECF No. 158.

On September 2, 2021, the Court heard oral argument by videoconference. ECF No. 172. On October 28, 2021, the Court considered further argument on the motions and conducted a show cause hearing in Spokane, Washington. ECF Nos.

**ORDER DISMISSING ACTION** *1

179, 180. Plaintiffs Magdi and Alisa Gergawy are represented primarily by Ryan M. Best. Defendant United States Bakery is represented by Richard J. Omata and Joshua M. Howard. Defendants Tami Kinnunen and Occupational Health Solutions, Inc. are represented by William M. Symmes and Sawyer R. Margett.

The Court has reviewed the briefing and applicable caselaw, has heard from counsel, and is fully informed. The Court first strikes the declaration of Magdi Gergawy under the sham affidavit rule and as a sanction to Plaintiffs' counsel Ryan Best for filing fake evidence. Second, the Court finds that Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims, and summary judgment is therefore granted in their favor. Notwithstanding these conclusions, the Court also sanctions Mr. Best for misrepresenting facts and evidence by dismissing the action. Accordingly, all pending motions are granted.

## I. Procedural History

Defendant United States Bakery, Inc. and Defendants Tami Kinnunen and Occupational Health Solutions, Inc. filed their respective Motions for Summary Judgment on June 29, 2021. ECF Nos. 116, 122. On August 3, 2021, Defendant United States Bakery, Inc. filed a Motion to Strike Declaration in Opposition to Motion for Summary Judgment. ECF No. 158. The remaining defendants filed a Motion for Sanctions or for a Show Cause Hearing the same day. ECF No. 149.

## II. Facts

The following facts originate from the parties' respective Statements of Material Facts. ECF Nos. 117, 123, 138, 145, 153, 159. For the reasons discussed below, factual assertions deriving from Magdi Gergawy's Declaration in Opposition to Defendants' Motions for Summary Judgment, ECF Nos. 136, are stricken.[1]

---

[1] The Court notes that it formally closed the record on both summary judgment motions on September 2, 2021. ECF Nos. 172, 179 at 4. Accordingly, Plaintiffs'

**ORDER DISMISSING ACTION \*2**

Although the facts are construed in favor of Plaintiffs where a reasonable juror could interpret the evidence in their favor, the Court finds that there are no material disputes of fact that preclude summary judgment.

### A. Employment at United States Bakery

Since 2003, Plaintiff Magdi Gergawy has been employed by Defendant United States Bakery, doing business as Franz Family Bakeries ("USB"). Defendant Occupational Health Services ("OHS") was the third-party workers' compensation claims administrator for USB until August 2019. Defendant Tami Kinnunen is a workers' compensation specialist employed by OHS (collectively, "OHS Defendants"). Mr. Gergawy was never an employee of OHS.

USB is a family bakery that has operated since 1906. Production at the Spokane, Washington bakery is divided between a bread line and bun line. There are nine skills on the bread line: (1) production foreperson, (2) sponger, (3) mixer, (4) mixer helper, (5) divider, (6) pan stacker, (7) oven operator, (8) wrap foreperson, and (9) wrapper. There are eight similar skills on the bun line. The bread and bun line positions are in a bargaining unit represented by a labor union. Under the applicable Collective Bargaining Agreement ("CBA"), the foreperson positions are

---

Corrected Document, ECF No. 174, which was filed on September 23, 2021, is **STRICKEN** from the record.

However, the Court takes notice that Plaintiffs' counsel Ryan Best, by filing the corrected document, acknowledged that the initial declaration presented ethical issues. He stated: "Pursuant to the RPCs, Plaintiff is correcting errors in his Declaration that he knows to be untrue and drafting errors for clarity." ECF No. 174 (description of Corrected Document on CM/ECF). The Court also acknowledges that Mr. Best filed the corrected declaration long after OHS Defendants filed their Motion for Sanctions on August 3, 2021, ECF No. 149, and after this Court expressed concerns at the hearing on September 2, 2021. ECF No. 172.

**ORDER DISMISSING ACTION \*3**

appointed, and the remaining jobs are considered "bid" jobs that are awarded based on seniority and qualifications. Forepeople at USB do not have the authority to hire, fire, demote, promote, or grant or deny Federal Medical Leave Act ("FMLA") leave. They can, however, send workers home early, alter when workers are given breaks, and make workers' jobs more physically intensive by assigning specific jobs. Forepeople also have more opportunity to work overtime than bid workers.

There are significant differences between the skills and qualifications required to become a "wrap" foreperson versus a "production" foreperson. To qualify as a wrap foreperson, employees must only be proficient in the wrapper position and trained to complete wrap foreperson paperwork. In contrast, to qualify as a production foreperson, employees must be proficient in all the remaining production bid jobs on the bun or bread line and be trained to complete production foreperson paperwork. For example, a bread production foreperson must learn all the positions in the mixing room—which consists of sponger, mixer, and mixer helper. It is undisputed that Mr. Gergawy never completed training in the mixing room.

In the present action, Mr. Gergawy asserts claims against Defendant USB for (1) negligent supervision; (2) violations of the Family Medical Leave Act; and (3) violations of the Washington Law Against Discrimination, Age Discrimination in Employment Act, Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. Specifically, Mr. Gergawy contends that Defendant USB failed to train him for the production foreperson position due to his disability, age, race, and/or national origin, and Defendant USB failed to provide reasonable accommodations for his disability. Mr. Gergawy also pleads causes of action against OHS Defendants for (1) unlawful interference with his workers' compensation claim; and (2) violation of the Consumer Protection Act. As for the purported unlawful acts of OHS Defendants, Mr. Gergawy asserts that Defendant Tami Kinnunen discriminated against him based on the disposition of his workers' compensation

claim. ECF No. 28 at 17–18. The underlying facts of these claims are discussed in turn.

### B.    Failure to Train Allegations

Mr. Gergawy contends that Jim Grantham, the USB production manager, refused to train him as a foreperson because of his protected characteristics. Mr. Grantham is the primary decisionmaker as to who is selected as a foreperson at USB. Mr. Gergawy also asserts that Defendant USB took retaliatory actions against him for filing an EEOC complaint and taking FMLA leave. For example, while Mr. Gergawy originally did not work Saturdays and Sundays, he claims that Defendant USB eliminated his Sundays off and granted that day off to a worker with less seniority. He also asserts Defendant USB installed cameras to monitor his workstation.

Mr. Grantham asserts that he met with Mr. Gergawy and offered to have the production supervisor, Brian Sills, look for training opportunities for Mr. Gergawy to learn the mixing room and production foreperson paperwork so he could become a foreperson. Mr. Grantham identified hours for training in January 2020 for Mr. Gergawy to attend—three days of training in the mixing room were provided on January 14, 15, and 16, 2020. On or about January 17, 2020, Mr. Grantham offered to allow Mr. Gergawy to come in at the beginning of a foreperson shift to learn the foreperson paperwork and earn overtime. On March 2, 2020, Mr. Gergawy went out on a workers' compensation claim without responding to Mr. Grantham's offer to provide additional training.

At some point, Mr. Grantham appointed Paul McAvoy to fill a relief foreperson position because the former relief foreperson was retiring. Mr. Grantham claims Mr. Gergawy was not considered for the position because he had appeared to have lost interest in becoming a foreperson and was out of work for the foreseeable future. He states that he selected Mr. McAvoy for the position because he was a

former bun production foreperson and required minimal training to get up to speed, as he had previously trained on all the bun line production jobs.

In August 2020, Defendant USB added a swing shift foreman position. Although Mr. Gergawy states he sought this position, he was not selected. On January 1, 2021, Mr. Sills offered foreperson training to Mr. Gergawy again, and Mr. Gergawy stated he could not accept training until he spoke with his attorney. After back-and-forth correspondence, Mr. Gergawy ultimately agreed to begin training again on January 25, 2021. Mr. Gergawy was provided foreperson paperwork training on February 3 and February 4, 2021. He was informed that his mixing training would resume whenever training hours were available, as there were not enough bid workers to cover Mr. Gergawy's position on the oven. On February 9, 2021, Mr. Gergawy went out on another workers' compensation claim and therefore ceased training. Mr. Grantham claims that, unlike others who requested foreperson training, Mr. Gergawy did not sign up for training on the additional required positions, including the sponger, mixer, and mixer helper positions.

### C.    Harassment Allegations

On or about May 23, 2019, management for Defendant USB met with Mr. Gergawy and a production foreperson, Quincy White, regarding Mr. Gergawy's allegations of harassment against Mr. White. Mr. Gergawy asserted that Mr. White falsely accused him of failing to be at his assigned station and Mr. White harassed him by asking him twice to help fix a pan jam. Mr. White stated that he did not believe Mr. Gergawy was at his workstation and claimed that he only asked for Mr. Gergawy's help once.

On or about February 26, 2020, Defendant USB's management allegedly met with Mr. Gergawy again. Mr. Gergawy claimed that Mr. White was harassing him by accusing him of "standing around." Defendant USB counseled Mr. White that he needed to communicate better with Mr. Gergawy and that refusing to interact with Mr. Gergawy was not a viable solution to their workplace dispute. While Defendant

USB claims Mr. Grantham contacted Mr. Gergawy to tell him about this remedial action on March 4, 2020, Mr. Gergawy states he was never contacted. Regardless, the Court finds this contradiction immaterial to summary judgment.

On or about July 9, 2020, Mr. Gergawy again complained to management that Mr. White "was harassing him by asking him to give breaks." Mr. Gergawy claimed that Mr. White harassed him by attempting to force him to act as a foreperson via requiring him to cover breaks while simultaneously running the oven. Defendant USB again followed up with Mr. White, who claimed that he was surprised that Mr. Gergawy was still reporting disagreements, because he had avoided Mr. Gergawy to the best of his ability. Defendant USB's management reiterated to Mr. White that avoiding Mr. Gergawy was not a solution to their workplace dispute. Defendant USB communicated with Mr. Gergawy on July 15, 2020 and shared that Mr. White was counseled on his communication skills, but further that Mr. Gergawy was required to cover breaks as part of his bid job. At that point, Mr. Gergawy agreed, and Defendant USB did not receive any additional complaints from Mr. Gergawy regarding Mr. White.

In Mr. Gergawy's deposition, he admitted that the above were the instances of harassment supporting his claim for negligent supervision. It is also undisputed that Mr. Gergawy never reported any derogatory remarks about Mr. Gergawy's age, race, national origin, color, and/or disability from management or supervisors.

### D.    Workers' Compensation Allegations

Defendant OHS is a certified third party administer of workers' compensation claims. Between November 1, 2005 and August 31, 2019, OHS was Defendant USB's third-party administer and managed its workers' compensation claims. Ms. Kinnunen, one of OHS's employees, primarily administered Mr. Gergawy's workers' compensation claim.

On July 8, 2018, Mr. Gergawy submitted a claim for a lower back and neck injury from pushing a heavy dolly at work. Defendant USB did not challenge the

ORDER DISMISSING ACTION *7

validity of Mr. Gergawy's claim and accepted the reported cervical and lumbar strain from the dolly incident as a valid workers' compensation injury. His claim lasted a total of 10 months, and Mr. Gergawy was intermittently placed on workplace restrictions by his doctors. In December 2018, Mr. Gergawy transferred his care to physician assistant Scott Pleines, who practices occupational medicine. Mr. Pleines continued to treat Mr. Gergawy until February 2019, when he requested that Mr. Gergawy undergo an Independent Medical Exam ("IME") to assist with diagnosis and treatment. Pursuant to this request, Ms. Kinnunen scheduled Mr. Gergawy's IME, which occurred later that month.

On April 24, 2019, the IME panel, comprising of an orthopedic surgeon and a neurologist, found that Mr. Gergawy had reached maximum medical improvement with regards to his "accepted condition"—the cervical lumbar strain that Mr. Gergawy sustained while pushing a dolly—and would not benefit from further treatment. ECF No. 55-1 at 5 (IME Report).[2] Regarding the accepted condition, the IME panel concluded that "[t]here is no need for any additional diagnostic testing or consultations" and that Mr. Gergawy "is fixed and stable, and we do not recommend any additional curative treatment." *Id.* Last, based on the analysis of his accepted condition, the IME panel found he was "capable of continued unrestricted work activity . . . ." *Id.* at 6.

OHS Defendants received the IME report on or about Thursday, May 2, 2019. On Monday, May 6, 2019, Ms. Kinnunen faxed the IME report to Mr. Pleines at

---

[2]     Plaintiffs object to the IME report as inadmissible hearsay evidence. ECF No. 138 at 10, ¶ 32. However, evidence submitted in connection with a summary judgment motion does not have to be presented in an admissible form. Regardless, the Court finds that the IME report could be presented in an admissible form at trial, *see, e.g.*, Fed. R. Evid. 803(4), (6), and therefore considers the report as pertinent evidence in this section.

**ORDER DISMISSING ACTION** *8

10:59 a.m., alongside a standard questionnaire for him to complete indicating whether he deferred to, agreed, or disagreed with the IME results. However, that same day, Mr. Gergawy left work early to see Mr. Pleines and report worsening symptoms. During Mr. Pleines' meeting with Mr. Gergawy, which began around 11:00 a.m., Mr. Pleines did not know about the IME results Ms. Kinnunen had faxed to him. Mr. Gergawy asserts that, at some point on May 6, 2019, Ms. Kinnunen told Mr. Gergawy over the telephone that she was going to have Mr. Pleines release him back to work without restrictions.

Partly because he believed the IME results were still pending, Mr. Pleines declined to make a formal diagnosis regarding Mr. Gergawy's pain, did not perform a full examination, and instead placed him on additional work restrictions. Thus, at 11:20 a.m., Ms. Kinnunen received an "Activity Prescription Form" from Mr. Pleines. An Activity Prescription Form relays information from a treating provider regarding an employee's ability to work and any functional capacities and physical restrictions due to an accepted condition. The Activity Prescription Form indicated that Mr. Gergawy had a decreased range of motion and placed him on modified duty for 21 days. At 11:30 a.m., Ms. Kinnunen called Mr. Pleines' office to confirm whether the office had received her fax. The office personnel indicated they would make him aware of it. OHS Defendants claim Ms. Kinnunen did not conduct any other calls to Mr. Pleines' office after 11:30 a.m., but Plaintiffs assert there were additional communications.

Mr. Pleines received the faxed IME report shortly after Mr. Gergawy left his May 6, 2019 appointment.[3] After reviewing the report and Mr. Gergawy's medical

---

[3]    Plaintiffs claim that Mr. Pleines signed the Medical Assessment and Treatment Plan after he deferred to the IME report. In support, they cite to Mr. Gergawy's prior declaration, which stated: "Prior to the IME, Mr. Pleines told me that Ms. Kinnunen wanted to close my L&I claim and that Ms. Kinnunen had asked

**ORDER DISMISSING ACTION *9**

records, Mr. Pleines determined he would defer to the IME panel's conclusions. Accordingly, he returned Ms. Kinnunen's form by fax at 11:36 a.m. on May 6, 2019, having marked an "X" next to the line that said, "I defer to examiner[.]"

Mr. Gergawy called Ms. Kinnunen at 11:57 a.m., shortly after leaving Mr. Pleines' office. He told her that Mr. Pleines gave him additional work restrictions. Ms. Kinnunen urged Mr. Gergawy to schedule another appointment to review the IME results. Mr. Gergawy asserts that Ms. Kinnunen then called and scheduled the May 9, 2019 appointment on his behalf. OHS Defendants state that between 12:04 and 12:06 p.m., Mr. Gergawy called Mr. Pleines' office to schedule the appointment himself. This factual disagreement is immaterial.

On May 9, 2019, Mr. Pleines met with Mr. Gergawy and told him that he had deferred to the IME panel's conclusions that Mr. Gergawy had reached maximum medical improvement with regard to his cervical and lumbar strain. Accordingly, Mr. Pleines released Mr. Gergawy to work without restrictions with respect to the accepted condition. That same day, Ms. Kinnunen submitted Mr. Gergawy's claim file to the Washington State Department of Labor and Industries ("L&I"), relying on his provider's deferral to IME report. On June 12, 2019, L&I closed the claim. Mr. Gergawy appealed the decision to close his claim and ultimately settled the dispute and received payment from Defendant USB.

On March 2, 2020, Mr. Gergawy submitted another workers' compensation claim and was placed on a series of restrictions that lasted through to June 13, 2020. Further, on February 9, 2021, Mr. Gergawy submitted a worker's compensation claim for wrist and forearm pain he experienced. As of June 28, 2021, he was out of work on this claim and still employed by Defendant USB.

---

Mr. Pleines to recommend an IME." ECF No. 77 at 6, ¶ 34. Even if this assertion is true, this claim does not support Plaintiffs' assertion that the IME was signed before Mr. Pleines' treatment plan on May 6, 2019. The evidence indicates the opposite.

**ORDER DISMISSING ACTION** *10

### III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B.    Sham Affidavits

"'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). The rule prevents "a party who has been

examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (internal quotation marks omitted). "The rationale underlying the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with himself to defeat summary judgment." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

Courts generally apply the sham affidavit rule with caution because it is in tension with the usual rule that the court should not make credibility determinations on summary judgment. *Van Asdale*, 577 F.3d at 998 (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993)). To trigger the rule, the court must make a "factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale*, 577 F.3d at 998–99). A district court may find a declaration to be a sham when it contains facts that the affiant previously indicated he could not remember. *Id.* However, newly remembered facts, or new facts, should not ordinarily lead to the striking of a declaration as a sham provided they are accompanied by a reasonable explanation. *Id.* (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999)).

## C.    Sanctions

A party who submits false pleadings to the Court may be sanctioned for improper conduct pursuant to several different sources of law, including Federal Rule of Civil Procedure 11(b), 28 U.S.C. § 1927, and the Court's inherent authority. Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

. . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1), (3), (4). When a party moves for sanctions under Rule 11, the motion must be served on an opposing party twenty-one days before filing the motion with the Court. *Id.* at 11(c)(1)(A). This is Rule 11's strict "safe harbor provision." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). If the Court determines that Rule 11 has been violated by its own, the Court may issue sua sponte sanctions on any attorney, law firm, or party that violated the rule. Fed. R. Civ. P. 11(c)(1). The safe harbor provision does not apply to Court-initiated sanctions; however, the subject party must have notice and an opportunity to respond. *Id.*; *Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007). The Court is also limited in its authority to impose monetary sanctions sua sponte. Fed. R. Civ. P. 11(c)(5).

The Ninth Circuit has held that sanctions may be imposed on the signer of a paper if the paper is filed for an improper purpose. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986). To determine if something is filed with an improper purpose, such as to harass, cause unnecessary delay, or needless increase to the cost of litigation, a comprehensive analysis is required. *Id.* at 831. The standard under Rule 11 is objective to eliminate any "empty head-pure heart" justification for conduct that violates Rule 11. *See Zaldivar*, 780 F.2d at 931; *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir.

**ORDER DISMISSING ACTION** *13

1999) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment). Thus, a violation of Rule 11 does not require subjective bad faith. *Zaldivar*, 780 F.2d at 829; *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993).

Sanctions under Rule 11 must be limited to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). In imposing an "appropriate" sanction under Rule 11, the Court is empowered to exercise its discretion. Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990). District courts maintain discretion to "fashion an appropriate sanction for conduct which abuses the judicial process," including, in extreme cases, "outright dismissal of a lawsuit." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Dismissal is an available sanction when "'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted). To determine whether the "harsh sanction" of dismissal is appropriate, a court should consider:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Id.* Of these factors, a court's key considerations are prejudice and availability of lesser sanctions. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (citation omitted). While the court need not make explicit findings regarding each of these factors, a finding of "willfulness, fault, or bad faith" is required. *Leon*, 464 F.3d at 958 (quoting *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). Additionally, the court must consider "less severe

**ORDER DISMISSING ACTION** *14

alternatives" than outright dismissal if it elects to dismiss. *Id.* (quoting *United States ex rel. v. Kahaluu Const. Co. Inc.*, 857 F.2d 600, 604 (9th Cir. 1988)).

## IV.    DISCUSSION

Resolution of Defendant USB's Motion to Strike impacts adjudication of the remaining motions. Accordingly, the Motion to Strike is considered first, with the remainder to follow.

### A.    Motion to Strike

The subject of Defendant USB's Motion to Strike is Plaintiff Magdi Gergawy's fourth declaration, filed in opposition to both Motions for Summary Judgment (the "Gergawy Declaration"). ECF No. 136. The Court finds that the Gergawy Declaration is a sham affidavit tailored to survive summary judgment. For this reason, it is stricken in its entirety. The Court also strikes the same as a sanction to Plaintiffs' counsel Ryan Best; the details of this sanction are thoroughly discussed under Section C.

In the Gergawy Declaration, Mr. Gergawy presents several factual assertions that contradict his deposition testimony. The following examples are illustrative but non-exhaustive. First, Mr. Gergawy testified in his deposition that his healthcare benefits lapsed for three or four days. Now, he declares the lapse was for sixteen days. *Compare* ECF No. 157-2 at 10:17–20 *with* ECF No. 136 at 4–5, ¶¶ 20, 22–23, 27–28, 30. Second, he testified that individuals needed training and knowledge on specific roles to obtain the foreperson position, such as mixing, in part because "[s]ome people can't do the mixing at all." Now, he declares the foreperson position does not require training in each position and that he is the *only* employee required to take hours of training. *Compare* ECF No. 157-3 at 6:24–8:4 *with* ECF No. 136 at 9, ¶¶ 50, 53. Third, Mr. Gergawy previously testified that he never held the bread sponger position and that he would need training to perform the bread mixer position. Now, he declares he was awarded shifts to work both mixing and sponging and that he was already trained to perform those specific roles. *Compare* ECF No.

**ORDER DISMISSING ACTION** *15

157-2 at 3–4 *with* ECF No. 136 at 9–10, ¶¶ 51, 56. Fourth, he testified that his work discipline history included a racial slur targeted at a co-worker. Now, he asserts he has no workplace discipline history. *Compare* ECF No. 157-1 at 36:1–38:22 *with* ECF No. 136 at 2, ¶ 8.

Mr. Gergawy does not contend that any of these factual discrepancies arise from newly remembered facts or newly discovered evidence. Indeed, he offers no explanation for these changes in his memory of events. Putting aside the fake exhibits that are attached to the Gergawy Declaration—which are discussed in detail under Section C—the above-noted assertions directly contradict Mr. Gergawy's prior deposition testimony in a material way that reflects bad faith on behalf of Plaintiffs. The contradictions go to the heart of Plaintiffs' failure to promote, unlawful harassment, failure to supervise, and FMLA interference claims.

To illustrate, the second and third contradictions are material because they primarily concern whether Mr. Gergawy is qualified for the foreperson position. Whether Mr. Gergawy is qualified is the core issue in Defendant USB's Motion for Summary Judgment. Sham factual disputes such as these greatly diminish the utility of summary judgment as a procedure for screening and preparing a case for trial. *Kennedy*, 952 F.2d at 266. They also reduce or eliminate the utility of the discovery process. To accept Plaintiffs' new assertions as fact would constitute a lack of fairness in the judicial process that would be prejudicial to Defendants. Parties must be able to rely on the sworn statements of each other throughout litigation, with some room for newly remembered facts and discrepancy short of express contradiction.

The Court finds that the rationale underlying the sham affidavit rule is applicable. Plaintiffs manufactured disputes of material fact in the signed affidavit to withstand summary judgment, and these facts are unambiguously contradicted by the record. *See Nelson*, 571 F.3d at 928. Because the Gergawy Declaration amounts to a "sham" maneuver by Plaintiffs and threatens to interfere with the rightful decision of this case, it is hereby stricken in its entirety.

**ORDER DISMISSING ACTION** *16

## B.    Motions for Summary Judgment

### 1.  OHS Defendants' Motion for Summary Judgment

OHS Defendants move for summary judgment on Plaintiffs' claim that OHS Defendants unlawfully interfered with Mr. Gergawy's workers' compensation rights. OHS Defendants primarily contend that the claim is barred by the Industrial Insurance Act ("IIA"), 51 RCW § 51.04, *et seq.* Plaintiffs argue that OHS Defendants wrongfully submitted paperwork to L&I on May 6, 2019 with intent prematurely close his worker's compensation claim. ECF No. 139 at 9. Plaintiffs aver that "Ms. Kinnunen knowingly followed the plan OHS and USB developed while they worked together to administer Mr. Gergawy's claim in a way that would get him back to work most quickly." *Id.* at 10. Due to this, Plaintiffs argue that they have presented a claim that is distinct from the workers' compensation process.

In this case, the Court finds that the IIA bars Plaintiffs' claim against OHS Defendants for alleged wrongful termination of his workers' compensation benefits, as Plaintiffs' claim amounts to a collateral challenge to Mr. Gergawy's inability to recover lost workers' compensation benefits. The IIA abolished jurisdiction of courts to consider any civil action for personal injuries stemming from the worker's compensation process, finding that "[t]he common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions." Wash. Rev. Code § 51.04.010. Mr. Gergawy presents no independent evidence of discrimination or unlawful interference that is distinct from his complaints regarding the workers' compensation process. Plaintiffs only contend that Defendants, acting together, wanted to "force" Mr. Gergawy back to work and ignored his medical treatment records and prescriptions for that purpose. ECF No. 139 at 9–10. Yet, Plaintiffs proffer no actual evidence to demonstrate that Defendants acted to deny Mr. Gergawy workers' compensation benefits in this manner.

**ORDER DISMISSING ACTION** *17

Plaintiffs cite *Reese v. Sears, Roebuck & Co.*, 107 Wash. 2d 563 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wash. 2d 903 (1989), for the principle that the IIA does not bar their claims of discrimination or unlawful interference. However, the injured plaintiffs in *Reese* did not allege that their employer or its third-party claims administrator wrongfully closed their workers' compensation claims. This matter is more akin to the factual issues in *Wolf v. Scott Wetzel Servs. Inc.*, 113 Wash. 2d 665, 665 (1989). The present claim is not a separate injury or action distinct from Mr. Gergawy's workers' compensation complaints, as was the claim in *Reese*. Rather, the present cause of action is closely tied to the regular procedures for disposition of workers' compensation claims.

This type of claim falls squarely under the immunity of the IIA, and consequently, Mr. Gergawy is barred from bringing a civil action for wrongful delay or termination of his benefits. *Wolf*, 113 Wash. 2d at 665. For identical reasons, Mr. Gergawy's cause of action against OHS Defendants under the Consumer Protection Act is also barred by the IIA. *Deeter v. Safeway Stores, Inc.*, 50 Wash. App. 67, 79 (1987) (concluding similarly that "under the facts as presented, a cause of action under the CPA, title 19.86, is precluded by the exclusivity provisions of the IIA"). Accordingly, the Court grants OHS Defendants' Motion for Summary Judgment.

## 2. Defendant USB's Motion for Summary Judgment

Defendant USB moves for summary judgment against Plaintiffs on their claims of discrimination and disparate treatment under the Washington Law Against Discrimination ("WLAD"), RCW § 49.60 *et seq.*, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as Plaintiffs' causes of action for negligent supervision and unlawful FMLA interference.

Like OHS Defendants, Defendant USB first argues that, to the extent any of Mr. Gergawy's claims of discrimination amount to complaints regarding the

workers' compensation claim administration process, they are barred by the IIA. Second, Defendant USB asserts that Mr. Gergawy is not qualified for the foreperson position, and therefore, Mr. Gergawy's contention that he was not promoted due to his race, national origin, disability, and age fails as a matter of law. Third, Defendant USB asserts that Mr. White had no authority to alter the terms of Mr. Gergawy's employment or grant or deny FMLA leave, and nonetheless, Mr. Gergawy's right to take FMLA was not affected.

In response, Plaintiffs argue that Mr. Gergawy's discrimination claims are not complaints about the workers' compensation process. Pertinent to this argument, they again assert that Defendant USB conspired with OHS Defendants to prematurely close Mr. Gergawy's workers' compensation claims. They also assert that Mr. Gergawy is qualified to be a foreperson at USB, and all of Defendant USB's explanations for its failure to promote him are pretextual. Further, Plaintiffs contend that Defendant USB failed to adequately supervise Mr. White, which amounted to unlawful harassment.

### a.    Negligent Supervision

Mr. Gergawy contends that a foreperson, Mr. White, harassed him by (1) letting another employee with less seniority go home before him; (2) asking Mr. Gergawy to cover a break for his co-worker, a pan stacker; and (3) reporting to management that Mr. Gergawy was not at his work area when a piece of equipment shutdown, which he states is untrue.

Negligent supervision requires a showing that (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) the employer's failure to supervise was the proximate cause of injuries to other employees. *Niece v. Elmview Group Home,* 131 Wash. 2d 39, 48–49 (1997).

**ORDER DISMISSING ACTION** *19

The Court accepts Plaintiffs' allegations as true and assumes that Defendant USB did not investigate any of Mr. Gergawy's complaints. In this case, each of Plaintiffs' proffered scenarios are akin to run-of-the-mill disagreements with a co-worker and do not amount to negligent supervision or risk of harm to Mr. Gergawy. In each instance, Mr. White was acting within the scope of his employment as a foreperson. For these reasons, Plaintiffs have not presented a prima facie case for negligent supervision, and Defendant USB is entitled to summary judgment.

### b.    Unlawful Interference

Plaintiffs also assert that Defendant USB unlawfully interfered with Mr. Gergawy's right to take leave under the FMLA because (1) Mr. White let another employee go home before him after Mr. Gergawy asserted that he wanted to take FMLA leave; and (2) Defendant USB permitted his health coverage to temporarily lapse when he was out on FMLA leave.

It is unlawful for an employer to interfere with, restrain, or deny an employee's exercise of FMLA rights. *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002). To establish a claim of FMLA interference, a plaintiff must establish (1) an entitlement to FMLA leave; (2) an adverse action by plaintiff's employer that interfered with plaintiff's right to take FMLA leave; and (3) a showing that the employer's adverse action was related to the exercise or attempt to exercise FMLA rights. *Beem v. Providence Health & Servs.*, No. CV–10–0037–JLQ, 2011 WL 4852301, at *13 (E.D. Wash. Oct. 13, 2011) (citing *Bass v. Potter*, 522 F.3d 1098 (10th Cir. 2008)).

To the extent Plaintiffs' claims overlap with the workers' compensation administration process, the Court finds that, for the same reasons noted above, they are prohibited by the IIA. With respect to the first allegation of interference, there is no dispute that Mr. White lacked authority to deny FMLA leave, as he is not responsible for processing, approving, or denying workers' requests for FMLA leave. ECF No. 123 at 15, ¶ 74. Mr. Gergawy was aware of this, as he pursued the

**ORDER DISMISSING ACTION** *20

proper procedures for acquiring FMLA leave several times and had taken approximately 33 weeks of FMLA leave between 2018 and 2021. *Id.* at ¶ 75. Indeed, all other arguments of Plaintiffs on this point fail because Mr. Gergawy was granted FMLA leave immediately after he spoke to his shift supervisor, who forwarded the request to Human Resources. *Id.* at 15, ¶¶ 74–75. The allegation that Mr. White allowed a co-worker to leave earlier than him on the day Mr. Gergawy requested for FMLA leave cannot demonstrate that Defendant USB, through Mr. White, interfered with Mr. Gergawy's right to take FMLA leave, much more that the alleged "interference" was due to his assertion of FMLA rights.

With respect to the second instance, Plaintiffs have proffered no evidence to indicate that Mr. Gergawy's temporary lapse in healthcare benefits was related to the exercise of his FMLA rights. Rather, the undisputed record shows that Mr. Gergawy's healthcare benefits automatically lapsed because Defendant USB's payroll department made a mistake in reporting Mr. Gergawy's work hours to USB's union-administered health plan during his leave. ECF No. 123 at 7, ¶ 33. When Mr. Gergawy informed Defendant USB that his benefits had lapsed on Friday, June 12, 2020, his benefits were retroactively reinstated on Monday, June 15, 2020. *Id.* at 7–8, ¶ 34. It is also worth noting that Plaintiffs only assert damages stemming from their purported anxiety induced by Mr. Gergawy's temporary lapse of benefits—yet, FMLA does not provide damages for emotional distress. *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008).

Plaintiffs have failed to offer evidence that any action adverse to Mr. Gergawy was related to his exercise of FMLA rights, or even that the purported actions interfered with his ability to exercise those rights. Rather, the record indicates that Mr. Gergawy utilized his FMLA benefits without issue. As a result, Defendant USB is entitled to summary judgment on Plaintiffs' interference claim.

//

//

**ORDER DISMISSING ACTION** *21

*c.    Disparate Treatment*

Plaintiffs bring claims for discrimination against Defendant USB based on his (1) disability under the ADA and WLAD, alleging that Defendant USB failed to promote him to the foreperson position due to his disability and also failed to provide reasonable accommodations; and (2) age, race, and ethnic origin under WLAD, Title VII, and ADEA, also alleging that Defendant USB failure to promote him due to his protected characteristics.

Plaintiffs first allege Mr. Gergawy was discriminated against due to his disability. "The ADA, and the Washington Law Against Discrimination . . . prohibit an employer from discriminating against an employee based on a disability." *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 908–09 (W.D. Wash. 2019) (citing 42 US.C. § 12112(a) and Wash. Rev. Code § 49.60.180(3)). To prevail on a claim of discrimination on the basis of disability, a plaintiff must prove that "(1) [he] was disabled under the ADA and/or WLAD; (2) [he] was a qualified individual with a disability; and (3) [he] was discriminated against by his employer because of that disability." *Id.* Although the WLAD offers protections "at least as broad" as those offered under the ADA, Washington courts look to federal case law interpreting remedial statutes like the ADA—as well as Title VII—"to guide interpretation of the WLAD." *Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 848–49 (9th Cir. 2018) (quoting *Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481 (2014)) (internal quotation marks and footnotes omitted).

Plaintiffs also assert causes of action for violations of the ADEA, WLAD and Title VII based on age, race, and ethnic origin. A plaintiff may establish a prima facie case of discrimination on these protected characteristics either by (1) offering direct evidence of an employer's discriminatory intent; or (2) satisfying the *McDonnell Douglas* burden-shifting test to give rise to an inference of discrimination. *Kastanis v. Educ. Emps. Credit Union*, 122 Wash. 2d 483, 491 (1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 692 (1973)); *see also*

*Shelley v. Geren*, 666 F.3d 599, 607–08 (9th Cir. 2012). With respect to a failure to promote claim, as relevant here, a plaintiff must demonstrate that "(1) [he] belongs to a [protected class]; (2) the plaintiff applied and was qualified for a job for which the employer was seeking applications; (3) despite the plaintiff's qualifications, he was rejected; and (4) the job remained open or was filled by a person who was not a member of a protected class." *McDonnell Douglas Corp.*, 411 U.S. at 802.

An employee can show that an employer's legitimate nondiscriminatory reason is pretextual by offering sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is pretextual; or (2) although the employer's stated reason is legitimate, discrimination was nevertheless a substantial factor motivating the employer. *Fell v. Spokane Transit Auth.*, 128 Wash. 2d 618, 643 n.32 (1996). A plaintiff's evidence of pretext must be "specific" and "substantial" to create a triable issue. *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). Further, to survive summary judgment under *McDonnell Douglas*, a plaintiff must offer more than "uncorroborated and self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that an employee's "self-serving generalized testimony stating that her subjective belief that discrimination occurred [is] simply insufficient to support a jury verdict in plaintiff's favor").

As a threshold matter, federal law governs suits for breach of collective bargaining agreements, completely preempting any state cause of action for the same breach. *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983). This rule also applies to suits based in tort if the tort is "'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Miller v. AT&T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988) (quoting *Allis-Calmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). For this reason, Plaintiffs' claims that require interpretation of the CBA's training and seniority provisions are

**ORDER DISMISSING ACTION** *23

preempted by federal labor law—this includes Plaintiffs' allegations that Defendant USB retaliated against him by installing a security camera or changing his weekend shift, both of which are indisputably governed by the CBA.

Plaintiffs admit that there is no direct evidence of any discrimination against Mr. Gergawy. ECF No. 141 at 12–13 ("Plaintiffs agree that direct evidence is currently unavailable to establish Mr. Gergawy's disparate treatment . . . ."). Plaintiffs therefore rely on an inference of discrimination to survive summary judgment. *Id.* at 13. They contend that Mr. Gergawy has wanted to become a foreperson since at least 2018 and that he is qualified for the position. For example, they argue he is already qualified for the wrap foreperson position. With respect to the bread production foreperson position, Plaintiffs contend that the record shows that "USB does not require such training [on bid jobs] for its non-Egyptian, non-disabled workers under forty years of age." *Id.* at 15. Alternatively, Plaintiffs assert that Mr. Gergawy is willing to complete paperwork (an "SOP") to avoid training for any bid jobs he has not yet received training for to become "grandfathered" through the skills chart system. *Id.* at 13–14.

Meanwhile, Defendant USB has presented legitimate, non-discriminatory reasons for its promotion of other employees to the foreperson position. Defendant USB contends that Mr. Gergawy had not completed training for the mixing room bid jobs, and for that reason, he has not been promoted to a foreperson position. The record is clear that Mr. Gergawy did not complete training on all bid jobs and was not qualified to become a foreperson absent additional training in the mixing room, which Mr. Gergawy admitted in his deposition. ECF No. 157-2 at 3–5. It is also undisputed that employees may only fill out an SOP if they previously gained competency in the position, or if they have completed the required supplemental training, if any, needed to bring them up-to-speed with any changes since last working the position. ECF No. 128 at 3–4, ¶ 14. Plaintiffs have proffered no evidence that any other employees obtained an exemption through this process

**ORDER DISMISSING ACTION** *24

without having previously become proficient in the relevant bid jobs. Furthermore, Mr. Gergawy only expressed interest in the production foreperson position until his response to the present summary judgment motion. ECF No. 123 at 11, ¶ 58. Mr. Gergawy's newly purported interest in the wrap foreperson position is unsupported by the evidence on record.

Mr. Gergawy also presents no evidence that younger, non-Egyptian employees appointed to the production foreperson roles lacked sufficient training in the bid jobs, such as those in the mixing room, and therefore has not proffered any evidence that Defendant USB's explanation is pretextual. For instance, while Mr. Gergawy's provides citations to wrap forepeople who were promoted before him, it is undisputed that wrap forepeople do not oversee any production positions and are not required to be proficient in the mixing jobs. ECF No. 131 at 4, ¶¶ 13–15. With respect to qualifications, the positions are not analogous. And again, the evidence indicates that Mr. Gergawy did not express interest in the wrap foreperson position until summary judgment.

To survive summary judgment, Plaintiffs must offer more than "uncorroborated and self-serving" testimony. *Kennedy*, 90 F.3d at 1481; *Grizzle*, 14 F.3d at 268 (employee's "self-serving generalized testimony stating her subjective belief that discrimination occurred [is] simply insufficient to support a jury verdict in plaintiff's favor"). Here, Plaintiffs have not articulated direct evidence of disability, age, race, or national origin discrimination against Mr. Gergawy. Rather, in his deposition, Mr. Gergawy admitted that his assertion of discrimination is only based on his subjective belief. *See, e.g.*, ECF No. 123 at 12, ¶ 63 (citing deposition transcript). Defendant USB provided legitimate, non-discriminatory explanations for the alleged failure to promote, and Plaintiffs failed to provide specific and substantial evidence of pretext to create a triable issue on these claims. As a result, Defendant USB is entitled to summary judgment with respect to Plaintiffs' state and federal anti-discrimination causes of action.

**ORDER DISMISSING ACTION** *25

### d. Failure to Accommodate

Finally, Plaintiffs aver that Defendant USB violated the WLAD and ADA by failing to provide reasonable accommodations for Mr. Gergawy's disability. "Judicial interpretations of the ADA and the WLAD differ slightly in the way they phrase the elements of an accommodation claim under the two statutes, but the basic requirements are essentially the same. Both statutes require the plaintiff to show that (1) she is disabled; (2) she is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of her disability; and (4) the employer failed to reasonably accommodate her disability."[4] *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014) (citing *Samper v. Providence St. Vincent Med. Cntr.*, 675 F.3d 1233, 1237 (9th Cir. 2012)); *Zickovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088–89 (9th Cir. 2002); *Davis v. Microsoft Corp.*, 149 Wash.2d 521, 530–31 (2003)). Under both statutes, the onus is on the employee to give the employer notice of the disability. *Goodman v. Boeing Co.*, 127 Wash.2d 401, 408, 899 P.2d 1265 (1995) (quoting *Holland v. Boeing Co.*, 90 Wash.2d 384, 391, 583 P.2d 621 (1978)); *see Barnett v. U.S. Air Inc.*,

---

[4] Plaintiffs cite an incorrect legal standard for this cause of action. ECF No. 141 at 8–9 (citing *Callahan v. Walla Walla Hous. Auth.*, 126 Wash.App. 812, 819–20, 110 P.3d 782 (2005)). WLAD gives rise to a cause of action for at least two different types of claims: (1) failure to accommodate, where an employer fails to take steps "'reasonably necessary to accommodate an employee's condition,'" and (2) disparate treatment, "when the employer discriminates against an employee because of the employee's condition." *Johnson v. Chevron U.S.A., Inc.*, 159 Wash.App. 18, 27–28, 244 P.3d 438 (2010) (internal citations omitted); *Kries v. WA-SPOK Primary Care, LLC*, 190 Wash.App. 98, 124, 141, 362 P.3d 974 (2015) (articulating separate legal standards for a claim of disparate treatment and failure to accommodate under WLAD).

**ORDER DISMISSING ACTION** *26

228 F.3d 1105, 1114 (9th Cir. 2000) (finding that an employer's duty to accommodate arises once an employee or her representative gives notice of the disability and desire for accommodation) (en banc), *vacated in part on other grounds*, 535 U.S. 391 (2002).

The Court assumes for purposes of summary judgment that Mr. Gergawy has a disability and has established the first element of his claim. Nonetheless, Mr. Gergawy admits that he did not request an accommodation or to have his job changed or modified in anyway, and indeed, that he did not need an accommodation. ECF No. 124-1 at 44:6–14. Under the ADA, an employer's duty to accommodate is triggered when the employee or his representative gives notice of the disability and a desire for accommodation. *See Barnett v. U.S. Air Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000). Similarly, an employer's duty to accommodate under the WLAD arises when they receive notice of the employee's disability and its physical limitations. *See Goodman*, 127 Wash.2d at 408. Since Mr. Gergawy admits that he did not need and did not request an accommodation for his disability, both claims fail as a matter of law. Accordingly, summary judgment is granted in Defendant USB's favor.

## C.    Motion for Sanctions

The final issue is whether sanctions should be levied against Plaintiffs' counsel Ryan Best for misrepresentations of fact and evidence in the Gergawy Declaration. The Court concludes that sanctions are appropriate in two forms: by striking the offending affidavit and dismissing the action. While this conclusion is duplicative of the Court's sham affidavit and summary judgment findings, respectively, the Court finds sanctions are necessary in this instance to preserve the integrity of the legal profession and judicial system. That being the case, the Court granted OHS Defendants' motion for a show cause hearing. The Court now issues the following Rule 11(b) sanctions sua sponte.

//

//

**ORDER DISMISSING ACTION** *27

1.  <u>The Court strikes the fake evidence.</u>

Ryan Best, on behalf of Mr. Gergawy, filed and attached two exhibits to the Gergawy Declaration that were later determined to be fake evidence.[5] For ease of discussion, the fake evidence is described here and attached to this Order.

The first piece of fabricated evidence filed by Mr. Best is attached to this Order as **Attachment 1**. It is a screenshot of text messages from Mr. Gergawy's cellphone. The fake evidence is cropped to exclude the top and bottom of the messaging application, which obscures the sender's name. Mr. Gergawy asserted that the fake screenshot was "a true and correct copy of <u>*Ms. Kinnunen's*</u> text message me[.]" ECF No. 136 at 21, ¶ 125 (emphasis added). As noted above, Ms. Kinnunen is an employee for Defendant OHS and is named as a separate defendant in this action.

The authentic version of the screenshot is attached as **Attachment 1.A**. In the real version of the cellphone screenshot, the sender's name is not obscured, and the entirety of the messaging application is visible. The text messages are plainly labeled as messages from April McDonough, Defendant USB's safety coordinator. Ms. McDonough is not a named defendant.

At the show cause hearing, Mr. Best explained that the fake version was created when a screenshot of Mr. Gergawy's cellphone was printed using a "default" setting for photographs on a printer—which centered the image and cropped the surrounding edges. Mr. Best claimed that, at some point thereafter, the printed message was internally labeled as one from Ms. Kinnunen. Then, Mr. Best stated he consistently mislabeled the message in Plaintiffs' briefing and the Gergawy Declaration.

_____

[5] Once more, the Gergawy Declaration was submitted in support of Plaintiffs' response brief in opposition to both pending motions for summary judgment. ECF No. 136.

**ORDER DISMISSING ACTION** *28

This explanation is neither persuasive nor credible. A printer's default setting may be a feasible explanation for the visual differences between the exhibits; however, it does not explain how Mr. Best attributed the text messages to Ms. Kinnunen rather than Ms. McDonough. Counsel's explanation requires the Court to take for granted that (1) Mr. Gergawy failed to read the language of his affidavit prior to signing it and attesting it to be true; and (2) the attorney(s) who drafted Mr. Gergawy's affidavit genuinely believed that the messages were from Ms. Kinnunen. ECF No. 184 at 3–5. The Court can accept neither.

With respect to the first point, Mr. Gergawy asserts that he simply did not read this aspect of the affidavit close enough. Specifically, he claims that he only focused on the substance of the text messages when reviewing his affidavit, rather than what the messages were presented as. ECF No. 184 at 4, ¶¶ 11–12. The Court rejects this contention, because it does not account for the remaining discrepancies at issue, including (1) the second fake exhibit, which is discussed below; (2) how the two fabricated exhibits were the sole evidence Plaintiffs relied on to support its argument that Defendants conspired together; and (3) the stark differences between other factual assertions in Gergawy Declaration and Mr. Gergawy's prior deposition testimony. The Court also rejects the second point. It is indisputable that Mr. Best and Mr. Gergawy were familiar with the real evidence, as it was accurately described by Plaintiffs throughout this litigation, including in Mr. Gergawy's deposition, Plaintiffs' Amended Complaint, and subsequent filings. *See, e.g.*, ECF No. 28 at 8, ¶ 2.44; ECF No. 50 at 5; ECF No. 151-1 at 4:8–25, 7:5–11, 10:6–11:6, 14:11–17, 15:18–16:2, 16:9–21.

The differences between the authentic and fake screenshots—and how they were represented to the Court—are material to this action. The authentic text messages are unhelpful to Plaintiffs, because they represent a mundane communication from USB's safety coordinator to Mr. Gergawy regarding the requirements he must meet before he could return to work. Meanwhile, the fake

**ORDER DISMISSING ACTION** *29

evidence depicts the third-party claims administrator, Ms. Kinnunen, reaching out to Mr. Gergawy to pressure him to return to work rather than facilitate his claim. Viewed in the light most favorable to Plaintiffs, the fake evidence creates a dispute of material fact as to whether Defendants, with improper motive or animus, collaborated to close Mr. Gergawy's workers' compensation claim and/or force him back to work prematurely.

The second fabricated piece of evidence filed by Mr. Best is an email chain consisting of eleven emails, attached to this Order as **Attachment 2**. The fake email chain depicts messages between several USB employees, including Ms. Jones and Ms. McDonough, and OHS employee Ms. Kinnunen. On the second page of the email chain, Ms. Jones appears to express her opinion that Mr. Gergawy was "one of those that's milking" Defendant USB's paid leave policies. The Court is left with an impression that Ms. Kinnunen is a recipient of Ms. Jones' "milking" comments and that the email communications are part of a single thread. In his declaration, Mr. Gergawy asserted that the fake exhibit was a "true and correct copy" of "an email[.]" ECF No. 136 at 4, ¶ 18 (emphasis added).

In truth, this "email" is a combination of *two separate* email chains. The authentic emails were sent almost one year apart and included different recipients. The first authentic email chain consists of four emails dated May 6–7, 2019; it is attached as **Attachment 2.A** (the "2019 email chain"). In the real version, OHS employee Ms. Kinnunen informed USB employees Ms. Jones and Ms. McDonough that she intended to submit Mr. Gergawy's workers' compensation claim to L&I, because Mr. Gergawy's medical care provider had deferred to the IME report.

The second authentic email chain consists of fifteen emails dated between April 21 and June 12, 2020; it is attached as **Attachment 2.B** (the "2020 chain email"). In this authentic email chain, Ms. Jones uses the "milking" language in private conversation with USB employee Elle Hagedorn. The 2020 email chain does not contain any communications to or from any OHS employees; indeed, Mr.

ORDER DISMISSING ACTION *30

Gergawy's claim closed in June 2019, and OHS Defendants stopped administering workers' compensation claims for Defendant USB by the end of August 2019.

Plaintiffs' counsel Ryan Best explained that he combined the 2019 and 2020 email chains into one exhibit because he (1) was working at the "eleventh hour" and decided to include the 2019 email chain at the last minute; and (2) "did not have time to repaginate all the lengthy exhibits and change all the cites to the same." *See, e.g.*, ECF No. 183 at 6–7, ¶¶ 15–16. He also asserts that he forgot to update the description of the exhibit in Gergawy Declaration, which identified the exhibit as a "true and correct copy" of "an email." Accepting Mr. Best's version of events as true, the Court is faced with conduct that, at the very least, amounts to wanton negligence and violates professional norms.

Once again, this explanation is neither persuasive nor credible. Although Mr. Best explained that he prepared the response pleadings at the "eleventh hour," he continued to file papers up until noon the following day, ECF Nos. 140–144, and made significant corrections to Plaintiffs' response brief to Defendant USB's Motion over the next twenty-four hours. *Compare* ECF Nos. 140–41 (original response and statement of disputed facts) *with* ECF Nos. 146 (correcting errors in almost every citation), 148. Plaintiffs' counsel corrected 150 citation errors in total but failed to address the most glaring evidentiary issue: that two pieces of evidence were not "true and correct" copies of what they purported to be.

In addition, Mr. Best's desire to avoid pagination changes is an implausible explanation for four distinct reasons. First, Plaintiffs did not paginate any of the exhibits in the Gergawy Declaration. *See* ECF Nos. 136-1–136-38. Although Local Civil Rule 10(a)(2) requires that all attachments be sequentially paginated, there are no page numbers on the exhibits filed. Indeed, Plaintiffs only cited the exhibits in their pleadings generally and did not reference specific page numbers.

Second, it is apparent that placing the 2019 email chain in front of the 2020 email chain would have caused *more* hardship and disruption than simply adding it

as a separate exhibit as the end of the Gergawy Declaration. If Mr. Best added the 2019 email chain at the eleventh hour, as he proposes, it would have required repaginating both the 2020 email and the remaining 35 exhibits. *See* ECF No. 136-3–136-38. This is substantially more work than if the exhibit was added to the end of the Gergawy Declaration, as it appears Mr. Best did for roughly half the exhibits. ECF Nos. 136 at 21–23, ¶¶ 123–41.

Third, there is no explanation for how the 2019 and 2020 email chains were fragmented and merged in the order presented. Page one of 2019 email chain is embedded at the beginning of the fake evidence. The second page of the fake evidence is page two of the 2020 email chain—not page one, as would be expected if the exhibits were combined for the reason articulated by Mr. Best. Page one of the 2020 email chain is conveniently excluded and works to create the appearance of a seamless transition between the two separate email chains.

Fourth, Mr. Best's explanation does not clarify how either fragmented exhibit could be a "true and correct copy" without the remainder of the respective email chains. Mr. Best properly labeled *eighty* exhibits that were attached to his declaration in opposition to the Motions for Summary Judgment. ECF No. 137-1–137-80. For each exhibit, Mr. Best used the following language format to describe—with specificity—exactly what each exhibit represented: "Attached to this Declaration as Exhibit [____] is a true and correct copy of Pg. [__], lines [____] of the deposition transcript of [____]." ECF No. 137 at 2–13; ECF No. 144 at 2–3 (citing the specific pages and lines of deposition transcripts submitted). Accordingly, it is clear to the Court that Mr. Best was aware of the importance of properly representing evidence and attesting that a document is a "true and correct copy" when it is a fragmented and merged version of two distinct documents.

Crucially, the fake email chain created discrepancies of fact that were material to resolution of the pending motions. When viewed in their authentic form, the email chains are relatively innocuous. The fake email chain is the only evidence that linked

**ORDER DISMISSING ACTION** *32

OHS Defendants to Ms. Jones' "milking" comment, which—for the reason noted above—works to create a more sinister narrative of collusion between the Defendants. Absent the fake evidence, Plaintiffs could not have made numerous factual assertions in their response brief—for example, (1) "USB and OHS consider Mr. Gergawy to be 'milking' the system"; (2) "OHS and USB Went to Extraordinary Lengths to Deny Mr. Gergawy Treatment Because Mr. Gergawy is a Disabled Middle Eastern Man They Believed to be Milking Them"; and in the context of OHS Defendants' liability specifically, (3) "[Mr. Gergawy] was classified as 'milking' his employer and was forced to return to work[.]" ECF No. 139 at 1, 5, 8, 13. Plaintiffs' response brief repeatedly attempted to tie the "milking" comment to both Defendants, without any other evidentiary support. ECF No. 139 at 1:26–2:5, 8:1–3; 13:6–12; ECF No. 148 at 4:15–5:6; ECF No. 138 at 3, ¶¶ 11–12 ("Neither OHS nor USB 'accepted' Mr. Gergawy's injuries, but rather considered Mr. Gergawy to be 'milking' them."). If the fake exhibit was truthful, it would have created a disputed fact regarding whether a claim distinct from the workers' compensation process existed. Summary judgment would have been denied.

Overall, the Court finds that the fake exhibits intentionally created disputes of material fact to evade summary judgment. The alterations in the exhibits are the only elements that make them relevant to Plaintiffs' response to the motions for summary judgment—and it is only the alterations, in conjunction with Plaintiffs' mischaracterizations, that supported their arguments in opposition to summary judgment. The altered screenshot and co-joined emails are so integral to Plaintiffs' otherwise unsupported factual contentions that the Court cannot find the errors inadvertent.

The Court has inherent authority to levy sanctions in response to abusive litigation practices. *Leon*, 464 F.3d at 958. The Court finds that an appropriate remedy for filing two false exhibits to evade summary judgment includes striking the offending affidavit as a whole. *See Chambers*, 501 U.S. at 44. For additional

**ORDER DISMISSING ACTION** *33

reasons discussed in detail below, counsel's behavior also warrants dismissal of this action.

## 2. The Court dismisses the action.

This action is dismissed sua sponte as a sanction to Plaintiffs' counsel, Mr. Best. The Court finds that Mr. Best filed the offending exhibits to evade summary judgment and for the improper purpose of misleading the Court. The exhibits were the only evidence proffered by Plaintiffs to support their assertion that Defendants conspired to prematurely close Mr. Gergawy's workers' compensation claim, and the exhibits were narrowly modified to do so. Mr. Best presents implausible explanations for how the exhibits arrived in their altered forms or how they were represented to the Court as authentic versions. In consequence, the Court concludes that Mr. Best willfully and with reckless disregard of the truth submitted false evidence that necessitates dismissal of this action.

The five factors articulated in *Leon* demonstrate that the sanction of dismissal is appropriate in this case. *Leon*, 464 F.3d at 958 (citations omitted). First, the public has a strong interest in expeditious resolution of litigation. Mr. Best's behavior has resulted in delay of this action, despite objective facts that are otherwise undisputed. Second, Mr. Best's conduct hinders the Court's ability to manage its dockets. The Court invests substantial resources when adjudicating dispositive motions. Misrepresentations of evidence require additional consideration from the Court that, in this case, amounts to a truth-finding expedition, and which belittle or even invalidate the purpose of counsel's duty of candor to the Court.

Third, the conduct is prejudicial to Defendants because it has cast doubt on the veracity of all of Plaintiffs' submissions and factual representations to date and needlessly increased the cost and length of litigation. Mr. Best argues that Defendants were able to rectify the factual misrepresentations by identifying them and raising them with the Court. Yet, being unable to rely on statements of fact by opposing counsel, Defendants are now essentially forced "to attempt independent

**ORDER DISMISSING ACTION** *34

corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that . . . [evidence] submitted by the opposing party [is] inaccurate." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009). The mere act of submitting false evidence creates substantial prejudice. *Id.* Defendants have been prejudiced in their ability to resolve this action on the merits, through the fair administration of justice, and without needless motions practice, expense, and delay. Due to the strong relationship between the misconduct and the remaining matters in controversy, the Court finds that counsel's behavior was prejudicial and, indeed, "threaten[ed] to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983).

Fourth, the Court does not offend the public policy of disposing of cases on their merits. *Leon*, 464 F.3d at 958. Plaintiffs' claims are also dismissed as a matter of law, for the reasons discussed above.

Fifth, lesser sanctions are not available to deter counsel's misconduct. Plaintiffs have twice made factual misrepresentations to this Court to survive summary judgment, and the Court has expressly admonished Plaintiffs under Rule 11 for a "borderline frivolous" motion. On February 16, 2021, the Court took note of Plaintiffs' attempt to mislead the Court on clear deposition testimony:

> The parties essentially dispute what Defendant's Rule 30(b)(6) deposition says; however, this is not a genuine dispute. The deposition says what it says. Review of the deposition testimony shows that the Rule 30(b)(6) testimony supports each ground raised by Defendant in its amended answer . . . .

ECF No. 106 at 9–10. On March 9, 2021, when adjudicating Defendants' respective Motions for Partial Summary Judgment, the Court again acknowledged counsel's attempt to distort otherwise unambiguous factual evidence:

> Although the Court is declining to invoke [the sham affidavit] rule, the Court is very skeptical that Plaintiffs ever thought that OHS was his employer or that Ms. Kinnunen was his supervisor. Indeed, deposition testimony indicates that Mr. Gergawy in fact thought OHS had nothing to do with the actual terms of his employment. . . .

**ORDER DISMISSING ACTION** *35

ECF No. 108 at 8 n.1. Even more substantially, this Court undertook a thorough Rule 11 analysis when presented with Plaintiffs' Motion for Reconsideration. ECF No. 113. In its Order denying the Motion for Reconsideration, the Court held that

> In this case, the factual contentions in Plaintiffs' motion lack evidentiary support. Unlike the representations made by Plaintiffs' counsel, the Letter [from the Industrial Claim Suppression Unit] does not make any statement regarding the general right to pursue a cause of action for claim suppression or about Mr. Gergawy's specific right to do so. . . . [T]he motion is borderline frivolous. The Letter cannot reasonably be construed as a statement of the agency's interpretation as to whether Mr. Gergawy has a right to pursue a private cause of action for claim suppression under the Industrial Insurance Act. After conducting the reasonable inquiry required by Rule 11(b), a competent attorney would not believe the filing is "well grounded in fact." Rather, the factual contentions made by Plaintiffs' counsel in their motion regarding the Letter were misleading or made without a reasonable and competent inquiry. If Plaintiffs' motion is not baseless and lacking in plausibility, it is dangerously close.

*Id.* at 8–9 (internal citations omitted). At that time, the Court reminded "Plaintiffs' counsel to carefully review the Federal and Local Rules prior to signing and filing any paper with the Court." *Id.* at 9. These warnings have fallen on deaf ears.

By submitting exhibits and assertions of fact known by counsel to be untrue, Mr. Best attempted to deceive the Court and engaged in conduct that is inconsistent with the orderly administration of justice.[6] *Leon*, 464 F.3d at 958. With all factors weighing in favor of this hefty sanction, the Court hereby dismisses the action in full.

### 3. The Court declines to award attorneys' fees.

As a final matter, the Court denies Defendants' respective requests for attorneys' fees. The Court finds that the above sanctions are sufficient to deter

---

[6] Additionally, Washington State Rules of Professional Conduct 3.1 and 3.3(a)(4) may have been violated, but that is a matter best determined by the Washington State Bar Association.

**ORDER DISMISSING ACTION** *36

repetition of the described conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(2).

## V.    CONCLUSION

The Court strikes the Gergawy Declaration, ECF No. 136, under the sham affidavit rule and, on a separate basis, as a sanction to Plaintiffs' counsel Ryan Best. The Court also concludes that Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims, and therefore grants summary judgment in their favor. Nonetheless, the Court sanctions Mr. Best by dismissing this action. Striking the offending declaration and dismissing this action are the only appropriate remedies, given the Court's previous warnings, the gravity of the misconduct, and the resulting prejudice to Defendants.

Accordingly, **IT IS HEREBY ORDERED**:

1.    OHS Defendants' Motion for Summary Judgment, ECF No. 116, is **GRANTED**.

2.    Defendant USB's Motion for Summary Judgment, ECF No. 122, is **GRANTED**.

3.    OHS Defendants' Motion for Sanctions or for a Show Cause Hearing, ECF No. 149, is **GRANTED**.

4.    Defendant USB's Motion to Strike Declaration in Opposition to Motion for Summary Judgment, ECF No. 158, is **GRANTED**.

5.    The District Court Clerk is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **CLOSE** the file.

**DATED** this 8th day of February 2022.

Stanley A. Bastian
Chief United States District Judge

**ORDER DISMISSING ACTION** *37

# Attachment 1

## (Fake Text Message)

Are you still at the ER?

No I'm on my way home right now they give me pain shot I am Deorro the pain pill prescription for me

So you're getting home safely?

I am on my way home right now Alisa came picked me up thank you for your help I will talk to you on Thursday

Thu, May 9, 8:02 AM

Your doctor has already agreed with the IME. When you see him today to discuss, if you plan on returning to work sooner than the 27th, you still need a note from him releasing you.

# Attachment 1.A

## (Real Text Message)




April

Text Message
Mon, May 6, 8:41 PM

Are you still at the ER?

No I'm on my way home right now
they give me pain shot I am Deorro
the pain pill prescription for me

So you're getting home safely?

I am on my way home right now
Alisa came picked me up thank
you for your help I will talk to you
on Thursday

Thu, May 9, 8:02 AM

Your doctor has already agreed
with the IME. When you see him
today to discuss, if you plan on
returning to work sooner than the
27th, you still need a note from
him releasing you.













# Attachment 2

## (Fake Email Chain)

| | |
|---|---|
| **From:** | Angela Jones |
| **Sent:** | Tuesday, May 7, 2019 1:56 PM |
| **To:** | 'Tami Kinnunen'; April McDonough |
| **Cc:** | Grant Birch |
| **Subject:** | RE: Gergawy, Magdi - SK34160 |

Oh yeah. He's gonna be fired up! Sure glad I moved offices. ☺

> **From:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>
> **Sent:** Tuesday, May 07, 2019 1:50 PM
> **To:** Angela Jones <Angela.Jones@usbakery.com>; April McDonough <April.McDonough@usbakery.com>
> **Subject:** RE: Gergawy, Magdi - SK34160
>
> Hi,
>
> TTD will stop as paid through 05/06/19 because the AP, Scott Pleines, PAC, concurred with our IME on 05/06/19.
> Mr. Gergawy will not be happy because I am sending his claim for closure based on AP concurrence.
>
> Thanks,
> Tami

 

CONFIDENTIALITY NOTICE: This e-mail and any attachments are intended solely for the use of the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt, or protected from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any review, use, disclosure, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies and attachments.

> **From:** Angela Jones <Angela.Jones@usbakery.com>
> **Sent:** Tuesday, May 07, 2019 1:02 PM
> **To:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>; April McDonough <April.McDonough@usbakery.com>
> **Subject:** RE: Gergawy, Magdi - SK34160
>
> For data entry purposes, when would I begin classifying as personal instead of work comp?

>> **From:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>
>> **Sent:** Monday, May 06, 2019 11:38 AM
>> **To:** April McDonough <April.McDonough@usbakery.com>; Angela Jones <Angela.Jones@usbakery.com>
>> **Subject:** Gergawy, Magdi - SK34160
>>
>> Hello,
>>
>> Attached, please find an APF for Magdi Gergawy. AP has once again provided restrictions. However, I received the IME report and have forwarded it to AP for review. The Panel IME physicians state worker is MMI as it relates to the accepted conditions, Category 1 for cervical and lumbar (this carries NO PPD) and no impairment to the left shoulder.
>>
>> The IME physicians report that current need for treatment is for his Pre-existing cervical and lumbar degenerative disc disease, unrelated and unaffected on a more probable than not basis.

Benefits Administrator
1-503-232-2191  Ext: 4484

 For the *Love* of *Bread*.

**From:** Angela Jones
**Sent:** Wednesday, April 22, 2020 9:09 AM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Basically one month of intermittent leave for his wife and now he's been off since 3/5/20 for work comp.  His 12 weeks exhausts on 4/30.

**From:** Elle Hagedorn
**Sent:** Wednesday, April 22, 2020 8:41 AM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

Did his 12 weeks exhaust for FMLA related to himself or a family member? I think you mentioned he was out intermittent with his wife?

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191  Ext: 4484

 For the *Love* of *Bread*.

**From:** Angela Jones
**Sent:** Wednesday, April 22, 2020 8:37 AM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Yes, our pets are our children too...and can be spendy! ☺

I guess if we HAVE to give him four months, oh well.  I was just was trying to work around it, since technically his 12 weeks exhausts in April.  That would make his fourth month May.  The first month is not related to his work comp claim and he used paid time, so maybe that's why we're caught?? Can we get Chantay's opinion?

**From:** Elle Hagedorn
**Sent:** Wednesday, April 22, 2020 8:18 AM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

Morning Angie,
First of all.... Happy Birthday!  Hope you have an adult beverage planned for later...☺
I think people should get the extra $500.00 stimulus per animal as well as children....

Since we picked up March hours as FMLA, and if he stays out will you list the end date of 7/31/2020?  Giving him 4 months of FMLA?

Elle Hagedorn
United States Bakery

GERGAWY_002002

 For the *Love* of *Bread*

**From:** Angela Jones
**Sent:** Tuesday, April 21, 2020 2:51 PM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Yes, he was using pay. I was hoping we could tell him that May would be the last month we'd pick up. He's one of those that's milking us, but can't let him benefits exhaust because of his wife's medical condition.

**From:** Elle Hagedorn
**Sent:** Tuesday, April 21, 2020 2:48 PM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

Hi Angie,
I show the only month we paid under FMLA was March 2020 for coverage April 2020. He populated over 70 compensable hours since 8/2019 thru 2/2020. (you may have been running FMLA concurrent with paid time available?)

Thanks!

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191 Ext: 4484

 For the *Love* of *Bread*.

**From:** Angela Jones
**Sent:** Tuesday, April 21, 2020 2:32 PM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** Magdi Gergawy

Magdi is out on work comp. He has intermittent leave for his wife too. The first day of his 12 month rolling period was 8/9/19. Can you tell me how many months we have picked up for his benefits. He is under the baker's contract, so gets an additional month for the work related injury.

*Angie Jones*
HR Assistant | Spokane Franz
(509) 535-7726 x 2301
Fax (503)546-6639
angela.jones@usbakery.com



**Looking for employment? Go to:**

# Attachment 2.A

## (Real 2019 email chain)

**From:** Angela Jones
**Sent:** Tuesday, May 7, 2019 1:56 PM
**To:** 'Tami Kinnunen'; April McDonough
**Cc:** Grant Birch
**Subject:** RE: Gergawy, Magdi - SK34160

Oh yeah.  He's gonna be fired up!  Sure glad I moved offices. ☺

> **From:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>
> **Sent:** Tuesday, May 07, 2019 1:50 PM
> **To:** Angela Jones <Angela.Jones@usbakery.com>; April McDonough <April.McDonough@usbakery.com>
> **Subject:** RE: Gergawy, Magdi - SK34160
>
> Hi,
> TTD will stop as paid through 05/06/19 because the AP, Scott Pleines, PAC, concurred with our IME on 05/06/19.
> Mr. Gergawy will not be happy because I am sending his claim for closure based on AP concurrence.
>
> Thanks,
> Tami



> **CONFIDENTIALITY NOTICE:** This e-mail and any attachments are intended solely for the use of the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt, or protected from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any review, use, disclosure, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies and attachments.

> **From:** Angela Jones <Angela.Jones@usbakery.com>
> **Sent:** Tuesday, May 07, 2019 1:02 PM
> **To:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>; April McDonough <April.McDonough@usbakery.com>
> **Subject:** RE: Gergawy, Magdi - SK34160
>
> For data entry purposes, when would I begin classifying as personal instead of work comp?

> > **From:** Tami Kinnunen <Tami.Kinnunen@ohsolutions.biz>
> > **Sent:** Monday, May 06, 2019 11:38 AM
> > **To:** April McDonough <April.McDonough@usbakery.com>; Angela Jones <Angela.Jones@usbakery.com>
> > **Subject:** Gergawy, Magdi - SK34160
> >
> > Hello,
> > Attached, please find an APF for Magdi Gergawy.  AP has once again provided restrictions.  However, I received the IME report and have forwarded it to AP for review. The Panel IME physicians state worker is MMI as it relates to the accepted conditions, Category 1 for cervical and lumbar (this carries NO PPD) and no impairment to the left shoulder.
> >
> > The IME physicians report that current need for treatment is for his Pre-existing cervical and lumbar degenerative disc disease, unrelated and unaffected on a more probable than not basis.

I've contacted the AP office and asked Scott Pleines, PAC to review and respond to the IME ASAP.  I've also asked that they scheduled Mr. Gergawy for an appointment so that Scott Pleines can explain the IME to him.

Fingers crossed the AP concurs with our IME.  I will keep you posted!

Tami Kinnunen
Occupational Health Solutions, Inc
Phone: 541.306.3151
Fax: 541.306.3105

 

**CONFIDENTIALITY NOTICE:** This e-mail and any attachments are intended solely for the use of the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt, or protected from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any review, use, disclosure, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies and attachments.

** Please consider the environment before printing this e-mail. **

------------------------------- Electronic Communications Disclaimer -------------------------------------

This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer.

----------------------------------------------------------------------------------------------------------------

# Attachment 2.B

## (Real 2020 email chain)

**From:** Chantay Maule
**Sent:** Friday, June 12, 2020 4:31 PM
**To:** Grant Birch; Michelle Rose
**Subject:** FW: Magdi Gergawy

Hi Grant,

Per below Elle confirms May is the last month of coverage.  I also validated the time card and he was not put in for any protected leave after April; which is what would qualify for ER contributions.  At this time it appears he has exhausted all his protected leave, so we would need to discuss how Cobra would be paid if contributions are approved.  If we need to discuss further please advise.

I also let Elle know she didn't need to call you back regarding this.

Thanks,
Chantay

**From:** Elle Hagedorn
**Sent:** Friday, June 12, 2020 4:19 PM
**To:** Chantay Maule <Chantay.Maule@usbakery.com>
**Subject:** FW: Magdi Gergawy

fyi

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191  Ext: 4484

 For the *Love* of *Bread*..

**From:** Angela Jones
**Sent:** Wednesday, April 22, 2020 9:14 AM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Yes!  That's what I was going for. ☺  Thank you!

> **From:** Elle Hagedorn
> **Sent:** Wednesday, April 22, 2020 9:13 AM
> **To:** Angela Jones <Angela.Jones@usbakery.com>
> **Subject:** RE: Magdi Gergawy
>
> If his 12 weeks exhausts 4/30 then we would only pick up May as the 4th month.
>
> Elle Hagedorn
> United States Bakery

Benefits Administrator
1-503-232-2191  Ext: 4484



**From:** Angela Jones
**Sent:** Wednesday, April 22, 2020 9:09 AM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Basically one month of intermittent leave for his wife and now he's been off since 3/5/20 for work comp.  His 12 weeks exhausts on 4/30.

> **From:** Elle Hagedorn
> **Sent:** Wednesday, April 22, 2020 8:41 AM
> **To:** Angela Jones <Angela.Jones@usbakery.com>
> **Subject:** RE: Magdi Gergawy
>
> Did his 12 weeks exhaust for FMLA related to himself or a family member? I think you mentioned he was out intermittent with his wife?
>
> Elle Hagedorn
> United States Bakery
> Benefits Administrator
> 1-503-232-2191  Ext: 4484
>
> 

>> **From:** Angela Jones
>> **Sent:** Wednesday, April 22, 2020 8:37 AM
>> **To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
>> **Subject:** RE: Magdi Gergawy
>>
>> Yes, our pets are our children too…and can be spendy! ☺
>>
>> I guess if we HAVE to give him four months, oh well.  I was just was trying to work around it, since technically his 12 weeks exhausts in April.  That would make his fourth month May.  The first month is not related to his work comp claim and he used paid time, so maybe that's why we're caught??  Can we get Chantay's opinion?

>> **From:** Elle Hagedorn
>> **Sent:** Wednesday, April 22, 2020 8:18 AM
>> **To:** Angela Jones <Angela.Jones@usbakery.com>
>> **Subject:** RE: Magdi Gergawy
>>
>> Morning Angie,
>> First of all…. Happy Birthday!  Hope you have an adult beverage planned for later…☺
>> I think people should get the extra $500.00 stimulus per animal as well as children….
>>
>> Since we picked up March hours as FMLA, and if he stays out will you list the end date of 7/31/2020?  Giving him 4 months of FMLA?
>>
>> Elle Hagedorn
>> United States Bakery

Benefits Administrator
1-503-232-2191  Ext: 4484



**From:** Angela Jones
**Sent:** Wednesday, April 22, 2020 7:34 AM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

I need to send him his "exhausted" letter and I know as soon as he gets it he'll want to know when his benefits will lapse.

My pup is okay, but he has a growth on his lip and we're not sure what it is. It keeps getting bigger, so next week will have surgery to remove it and get his teeth cleaned.   Goodbye stimulus check! Lol!

**From:** Elle Hagedorn
**Sent:** Tuesday, April 21, 2020 3:07 PM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

No worries!  We'll figure it out at month end.

Hope your doggies ok!

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191  Ext: 4484



**From:** Angela Jones
**Sent:** Tuesday, April 21, 2020 3:01 PM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

I have to leave for the day to take my dog to the vet, so I'll catch up with you tomorrow.

**From:** Elle Hagedorn
**Sent:** Tuesday, April 21, 2020 2:53 PM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

So he has 2 FMLA events?  One for his spouse that's intermittent and now him with his W/C?

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191  Ext: 4484



**From:** Angela Jones
**Sent:** Tuesday, April 21, 2020 2:51 PM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** RE: Magdi Gergawy

Yes, he was using pay.   I was hoping we could tell him that May would be the last
month we'd pick up.    He's one of those that's milking us, but can't let him benefits
exhaust because of his wife's medical condition.

**From:** Elle Hagedorn
**Sent:** Tuesday, April 21, 2020 2:48 PM
**To:** Angela Jones <Angela.Jones@usbakery.com>
**Subject:** RE: Magdi Gergawy

Hi Angie,
I show the only month we paid under FMLA was March 2020 for coverage April 2020.
He populated over 70 compensable hours since 8/2019 thru 2/2020. (you may have
been running FMLA concurrent with paid time available?)

Thanks!

Elle Hagedorn
United States Bakery
Benefits Administrator
1-503-232-2191  Ext: 4484



**From:** Angela Jones
**Sent:** Tuesday, April 21, 2020 2:32 PM
**To:** Elle Hagedorn <Elle.Hagedorn@usbakery.com>
**Subject:** Magdi Gergawy

Magdi is out on work comp.  He has intermittent leave for his wife too.  The first day of
his 12 month rolling period was 8/9/19.  Can you tell me how many months we have
picked up for his benefits.  He is under the baker's contract, so gets an additional month
for the work related injury.

*Angie Jones*

HR Assistant | Spokane Franz
(509) 535-7726 x 2301
Fax (503)546-6639
angela.jones@usbakery.com



**Looking for employment? Go to:**

www.franzcareers.com

GERGAWY_002005